UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | |
|---|---|
| IN RE | CHAPTER 13 |
| KIM TRAUB A/K/A KIM M. TRAUB A/K/A | CASE NO. 25-22974-dsj |
| AQUA BRIGHT A/K/A KIMBERLY TRAUB | JUDGE: David S. Jones |
| DEBTOR | |

**NOTICE OF MOTION REQUESTING ENTRY OF AN ORDER GRANTING *IN REM* RELIEF PURSUANT TO 11 U.S.C. § 362(d)(4) WITH RESPECT TO THE FIRST MORTGAGE LIEN ON REAL PROPERTY LOCATED AT 111 HOOVER ROAD, YONKERS, NY 10710 OR, IN THE ALTERNATIVE, GRANTING RELIEF PURSUANT TO 11 U.S.C. § 362(d)(1) AND (2)**

PLEASE TAKE NOTICE that upon the annexed affirmation of the undersigned of the law firm of LOGS Legal Group LLP, attorneys for PHH Mortgage Corporation as Servicer for HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-B, Mortgage-Backed Certificates, Series 2005-B ("Movant") will move this Court as set forth below:

| | |
|---|---|
| JUDGE: | HON.  David S. Jones |
| RETURN DATE & TIME: | April 15, 2026 at 10:00 am |
| COURTHOUSE: | Via Zoom |
| RELIEF REQUESTED: | Entry of an order pursuant to 11 U.S.C. § 362(d)(4) providing that any subsequent bankruptcy filings affecting real property described herein shall not, as provided by § 362(d)(4), operate as a stay against such real property for a period of two years from the entry of such an order; or, in the alternative, for an order pursuant to 11 U.S.C. § 362(d)(1) and/or (d)(2) granting relief from the automatic stay as to the subject property, and for such other and further relief as this Court may deem just and proper. |

26-100863

**PLEASE TAKE FURTHER NOTICE,** that answering affidavits, if any, to the relief requested, must be served upon and received by LOGS Legal Group LLP at their offices at 175 Mile Crossing Boulevard, Rochester, NY 14624 and filed with the Clerk of the United States Bankruptcy Court for the Southern District of New York at One Bowling Green, Courtroom: 701, New York, NY 10004-1408 no later than seven (7) days prior to the return date of this motion.

PLEASE TAKE FURTHER NOTICE that any appearance on the within application will be held via Zoom. All parties are required to register for the hearing at least two days prior to the scheduled hearing by using the Court's ecourt Appearances Platform:

https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl.

If for some reason you are not able to use the eCourt Appearances platform you must email the Courtroom Deputy at least two (2) business days prior to the hearing and state that a reasonable effort to use the platform has been made. You must include your name, the case number(s), who you represent if you are an attorney, and the date of the hearing. **Your email must include in the Re line "I am not able to register using eCourt Appearances."** You will then be provided with the dial in / log in information. If you do not have internet access you may call the courtroom deputy with this information.

26-100863

Dated:   March 4, 2026

/s/Shari Barak

Shari S. Barak
LOGS Legal Group LLP
Attorneys for PHH Mortgage Corporation as Servicer
for HSBC Bank USA, National Association, as
Trustee for Fremont Home Loan Trust 2005-B,
Mortgage-Backed Certificates, Series 2005-B
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000
Fax: (585) 247-7380

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.   THIS NOTICE IS REQUIRED BY THE PROVISIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT AND DOES NOT IMPLY THAT WE ARE ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES.**

TO:   SERVICE LIST

26-100863

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | |
|---|---|
| IN RE | CHAPTER 13 |
| KIM TRAUB A/K/A KIM M. TRAUB A/K/A AQUA BRIGHT A/K/A KIMBERLY TRAUB | CASE NO. 25-22974-dsj |
| | JUDGE: David S. Jones |
| DEBTOR | |

**MOTION REQUESTING ENTRY OF AN ORDER GRANTING IN REM RELIEF PURSUANT TO 11 U.S.C. § 362(d)(4) WITH RESPECT TO THE FIRST MORTGAGE LIEN ON REAL PROPERTY LOCATED AT 111 HOOVER ROAD, YONKERS, NY 10710 OR, IN THE ALTERNATIVE, GRANTING RELIEF PURSUANT TO 11 U.S.C. § 362(d)(1) AND (2)**

The undersigned, an attorney at law duly admitted to practice before the Courts of the State of New York and the U.S. District Court for the Southern District of New York, hereby affirms the following to be true under penalty of perjury:

1. I am an attorney with the law firm of LOGS Legal Group LLP, attorneys for PHH Mortgage Corporation as Servicer for HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-B, Mortgage-Backed Certificates, Series 2005-B ("Movant"), a secured creditor of Kim Traub a/k/a Kim M Traub a/k/a Aqua Bright a/k/a Kimberly Traub ("Debtor"). As such, I am fully familiar with the facts and circumstances of this case.

2. I make this Affirmation in support of the within request for an order pursuant to 11 U.S.C. § 362(d)(4)[1] with respect to certain real property described herein, providing that any subsequent bankruptcy filing affecting such real property shall not, as provided by § 362(d)(4),

---

[1] *Unless otherwise stated, all statutory references are to the provisions of the United States Bankruptcy Code.*

26-100863

operate as a stay against such real property for a period of two years from the filing of such an order and/or for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2) against the subject property generally described as 111 Hoover Road, Yonkers, NY 10710, and for such other and further relief as this Court may deem just and proper.

3.   Jurisdiction is conferred on this Court by the provisions of 28 U.S.C. § 1334.  This is a proceeding to terminate and annul the automatic stay and is therefore a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## I.   STATEMENT IN SUPPORT OF IN REM RELIEF

4.   Within the past 16 years, a pending foreclosure has been halted or delayed by various tactics, including multiple bankruptcy filings, by Kim Traub a/k/a Kim M Traub a/k/a Aqua Bright a/k/a Kimberly Traub (the "Debtor"). Each bankruptcy petition filing asserted an interest in the real property located at 111 Hoover Road, Yonkers, NY 10710 (the "Property").

5.   The first bankruptcy case was filed by Kim Traub on May 3, 2010 in the Bankruptcy Court for the Southern District of New York under Chapter 13 as Case No. 10-22871-rdd (the "First Case"). The First Case was ultimately dismissed and an Order Dismissing Case was entered on August 3, 2010 as ECF Doc. No. 14.

6.   The second bankruptcy case was filed by Kim Traub on October 1, 2010 in the Bankruptcy Court for the Southern District of New York under Chapter 13 as Case No. 10-24073-rdd (the "Second Case"). The Second Case was ultimately dismissed for failure to make plan payments, and an Order Dismissing Case was entered on January 10, 2011 as ECF Doc. No. 11.

7.   The third bankruptcy case was filed by Kim Traub on May 4, 2012 in the Bankruptcy Court for the Southern District of New York under Chapter 13 as Case No. 12-22873-rdd (the

26-100863

"Third Case"). The Third Case was ultimately dismissed for failure to timely file required documents, and an Order Dismissing Case was entered on August 28, 2012 as ECF Doc. No. 23.

8.   The fourth bankruptcy case was filed by Kim Traub dba Aqua Bright on October 16, 2012 in the Bankruptcy Court for the Southern District of New York under Chapter 13 as Case No. 12-23833-rdd (the "Fourth Case"). The Fourth Case was ultimately dismissed for failure to make plan payments, and an Order Dismissing Case was entered on February 14, 2013 as ECF Doc. No. 17.

9.   The fifth bankruptcy case was filed by Kim M Traub on June 22, 2015 in the Bankruptcy Court for the Southern District of New York under Chapter 7 as Case No. 15-22882-rdd (the "Fifth Case"). The Fifth Case was ultimately dismissed and an Order Dismissing Case was entered on December 7, 2015 as ECF Doc. No. 14.

10. The sixth bankruptcy case was filed by Kim M Traub on February 26, 2016 in the Bankruptcy Court for the Southern District of New York under Chapter 7 as Case No. 16-22252-rdd (the "Sixth Case"). The Sixth Case was ultimately dismissed and an Order Dismissing Case was entered on August 4, 2016 as ECF Doc. No. 13.

11. The seventh bankruptcy case was filed by Kim M Traub on September 22, 2016 in the Bankruptcy Court for the Southern District of New York under Chapter 7 as Case No. 16-23281-rdd (the "Seventh Case"). The Seventh Case was ultimately dismissed and an Order Dismissing Case was entered on March 7, 2017 as ECF Doc. No. 10.

12. The eighth bankruptcy case was filed by Kim M Traub aka Aqua bright on November 13, 2017 in the Bankruptcy Court for the Southern District of New York under Chapter 7 as Case No. 17-23728-rdd (the "Eighth Case"). The Eighth Case was ultimately dismissed and an Order Dismissing Case was entered on April 16, 2018 as ECF Doc. No. 17.

26-100863

13. The ninth bankruptcy case was filed by Kim M Traub on October 25, 2019 in the Bankruptcy Court for the Southern District of New York under Chapter 13 as Case No. 19-23885-shl (the "Ninth Case"). The filing of the Ninth Case cancelled the foreclosure sale scheduled for October 30, 2019. The Ninth Case was ultimately dismissed for failure to make plan payments, and an Order Dismissing Case was entered on October 8, 2020 as ECF Doc. No. 42.

14. The tenth bankruptcy case was filed by Kim Traub on July 24, 2023 in the Bankruptcy Court for the Southern District of New York under Chapter 13 as Case No. 23-22554-cgm (the "Tenth Case"). The Tenth Case was ultimately dismissed and an Order Dismissing Case was entered on December 11, 2023 as ECF Doc. No. 32.

15. The eleventh bankruptcy case was filed by Kim Traub on March 15, 2024 in the Bankruptcy Court for the Southern District of New York under Chapter 13 as Case No. 24-2220-cgm (the "Eleventh Case"). The filing of the Eleventh Case cancelled the foreclosure sale scheduled for March 18, 2024. The Eleventh Case was ultimately dismissed for failure to make plan payments, and an Order Dismissing Case was entered on April 15, 2025 as ECF Doc. No. 58.

16. The twelfth and instant bankruptcy case was filed by Kim Traub a/k/a Kim M Traub a/k/a Aqua Bright a/k/a Kimberly Traub on October 14, 2025 in the Bankruptcy Court for the Southern District of New York under Chapter 13 as Case No. 25-22974-dsj (the "Twelfth Case").

17. The multiple filings of Debtor have severely hindered the foreclosure process resulting in delays in almost eleven years.

26-100863

18. The Debtor is not utilizing the automatic stay for legitimately seeking a fresh start. Rather, the multiple bankruptcy filings are an abuse of the automatic stay and the bankruptcy system, used to thwart creditors' efforts to enforce their state law rights in their collateral. There is more than an adequate basis to conclude, under § 362(d)(4), that the multiple cases are part of a scheme to delay, hinder, or defraud the efforts of Movant and other creditors who seek to enforce their state law remedies in the affected real property.

## II.    FACTUAL BACKGROUND

19. Movant is a secured creditor of the Debtor pursuant to a Note executed by Kim Traub on February 23, 2005, whereby Kim Traub promised to repay the principal amount of $391,000.00 plus interest to Fremont Investment & Loan (the "Note"). To secure the repayment of the Note, Kim Traub granted Mortgage Electronic Registration Systems, Inc. as nominee for Fremont Investment & Loan a Mortgage, which was duly recorded in the Westchester County Clerk's Office on December 27, 2006 in Control Number 463190228 (the "Mortgage," Note and Mortgage, collectively, as the "Loan"), encumbering real property located at 111 Hoover Road, Yonkers, NY 10710 (the "Property"). The Mortgage was transferred to Fremont Investment & Loan, and said transfer was memorialized by an Assignment of Mortgage executed on April 12, 2007 and recorded October 2, 2007 in Control Number 472690057. The Mortgage was subsequently transferred to HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-B, Mortgage Backed Cerificates, Series 2005-B, and said transfer was memorialized by an Assignment of Mortgage, intended as a Correction Assignment of Mortgage, executed on December 20, 2017 and recorded March 8, 2018 in Control Number 580653522. The terms of the Loan were modified by a Loan Modification Agreement effective July 1, 2007 by and between Fremont Investment and Loan and the Debtor creating a new principal balance

26-100863

in the amount of $420,522.47.  Copies of the Note, Mortgage, Loan Modification Agreement and Assignments of Mortgage are annexed hereto as **Exhibit "A"**.

20. Upon information and belief, the Debtor herein own(s) the Property.

21. Debtor filed a petition for relief under Chapter 13 of the U.S. Bankruptcy Code on or about October 14, 2025.

22. **The Mortgage was in default on the day the Debtor filed this bankruptcy.  Based upon said default, Movant initiated foreclosure proceedings in the Supreme Court of the State of New York, County of Westchester, under index number 6318/07.  Judgment of Foreclosure & Sale ("JFS") was entered August 5, 2009.**  Foreclosure sale was duly advertised in accordance with said judgment, with a sale date scheduled for March 18, 2024.  The filing of the instant bankruptcy stayed said sale.  Annexed hereto as **Exhibit "B"** are copies of the Judgment of Foreclosure & Sale and Notice of Sale.

### III.   GROUNDS FOR *IN REM* RELIEF UNDER 11 U.S.C. § 362(d)(4)

23. Taken together, the multiple bankruptcy cases, provide a more than adequate basis to find that the bankruptcy filings are part of scheme to delay, hinder or defraud secured creditors.

24. 11 U.S.C. § 362(d)(4) states that

> . . .after notice and a hearing, the court *shall* grant relief from the stay. . .
> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, *if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors* that involved either-
> (A)  transfer of all or part ownership of, or other interest in, such real property *without the consent of the secured creditor or court approval*; or
> (B)  multiple bankruptcy filings affecting such real property. If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the

26-100863

court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing.

11 U.S.C. § 362(d)(4) (emphasis added).

25. To obtain relief under § 362(d)(4), the moving party has the burden of proving that the current filing by the Debtor "is part of a scheme, that the scheme involved the transfer of real property or multiple filings, and that the object of the scheme is to hinder, delay, [or][2] defraud" the moving party. In re Lemma, 394 B.R. 315, 323 (Bankr. E.D.N.Y. 2008).

26. Courts have considered several factors in determining whether multiple filings raise an inference of intent to hinder, delay or defraud secured creditors, including (1) debtor's failure to make post-petition payments on the loan, (2) debtor's failure to file the required documents and information necessary to prosecute the bankruptcy, and (3) the timing and the sequencing of the filings. *See* In re Montalvo, 416 B.R. 381, 386–87 (Bankr. E.D.N.Y. 2009).

27. When evaluating whether to grant relief under § 362(d)(4), "the mere timing and filing of several bankruptcy cases is an adequate basis from which a court can draw a reasonable inference that the filing of a subsequent case was part of a scheme to hinder, delay, and defraud creditors." In re Blair, 2009 Bankr. LEXIS 4195, 63 Collier Bankr. Cas. 2d (MB) 513 (noting that each filing occurred on the eve or shortly before significant events effecting the property at issue and consequently granting *in rem* relief). In addition, when debtors "have evinced no true intention to reorganize their financial affairs . . . but [r]ather they have engaged in serial filings to thwart the efforts of [a secured creditor] to exercise its lawful rights under state law . . . [t]he serial filings are evidence of bad faith, and evidence of the fact that [the debtors] are abusing the bankruptcy

---

[2] *Prior to the 2010 amendments to the Bankruptcy Code, § 362(d)(4) relief required the filing of a petition that was part of a scheme to "hinder, delay,* and *defraud creditor." See Pub. L. 111-327, Sec. 2(a)(12)(C) (2010) (emphasis added).*

process." In re Montalvo, 416 B.R. 381, 385–86 (Bankr. E.D.N.Y. 2009) (granting *in rem* relief while observing that the various cases filed between the present debtor and co-obligor were dismissed for failure to comply with filing requirements).

28. The timing of the bankruptcy filings raise serious questions regarding Debtor's intent to hinder, delay and defraud Movant. The timing and sequencing of these events "allows the Court to draw a permissible inference . . . that the instant petition [is] part of a scheme of Debtor to delay, hinder, and defraud" Movant. In re Montalvo, 416 B.R. at 387.

29. Lastly, upon information and belief, little to no payments have been made on the Loan secured by the Property in over 18 years, as the loan is contractually due for the December 1, 2007 installment. As of February 10, 2026, the total amount owed on the Loan is $1,512,395.41. *See* In re Lemma, 394 B.R. 315, 325 (Bankr. E.D.N.Y. 2008) (weighing the borrower and debtor's attempts to fail to render payments to the secured creditor as part of a scheme to delay, hinder, and defraud).

30. Based on the foregoing, Movant is entitled to relief under § 362(d)(4) in light of the numerous bankruptcy filings of Debtor, the timing of the filings and the lack of payment on the Loan. These actions constitute a scheme to hinder, delay, and defraud Movant as its attempts to exercise its state law remedies as mortgagees.

## IV. IN THE ALTERNATIVE, RELIEF IS APPROPRIATE UNDER 11 U.S.C. § 362(d)(1) AND (2)

31. In the event this Court finds that in rem relief is not warranted, relief from the automatic stay should be granted, for cause, under 11 U.S.C. § 362(d)(1) and (2). Further detail on the default of the Loan is illustrated by the Relief from Stay Worksheet, affixed hereto as "**Exhibit C**" The loan is contractually due and owing for 219 payments:

26-100863

| | |
|---|---:|
| 33 Defaulted Monthly Payments at $3,441.94 each (December 2007 through August 2010) | $113,584.02 |
| 13 Defaulted Monthly Payments at $4,660.73 each (September 2010 through September 2011) | $60,589.49 |
| 13 Defaulted Monthly Payments at $4,606.53 each (October 2011 through October 2012) | $59,884.89 |
| 31 Defaulted Monthly Payments at $4,055.14 each (November 2012 through May 2015) | $125,709.34 |
| 12 Defaulted Monthly Payments at $3,722.71 each (June 2015 through May 2016) | $44,672.52 |
| 12 Defaulted Monthly Payments at $14,140.22 each (June 2016 through May 2017) | $169,682.64 |
| 6 Defaulted Monthly Payments at $3,637.27 each (June 2017 through November 2017) | $21,823.62 |
| 2 Defaulted Monthly Payments at $4,048.14 each (December 2017 through January 2018) | $8,096.28 |
| 8 Defaulted Monthly Payments at $4,044.77 each (February 2018 through September 2018) | $32,358.16 |
| 13 Defaulted Monthly Payments at $4,020.88 each (October 2018 through October 2019) | $52,271.44 |
| 10 Defaulted Monthly Payments at $3,610.53 each (November 2019 through August 2020) | $36,105.30 |
| 11 Defaulted Monthly Payments at $4,819.52 each (September 2020 through July 2021) | $53,014.72 |
| 12 Defaulted Monthly Payments at $6,039.88 each (August 2021 through July 2022) | $72,478.56 |
| 4 Defaulted Monthly Payments at $6,029.06 each (August 2022 through November 2022) | $24,116.24 |
| 8 Defaulted Monthly Payments at $6,044.75 each (December 2022 through July 2023) | $48,358.00 |
| 8 Defaulted Monthly Payments at $4,863.69 each (August 2023 through March 2024) | $38,909.52 |
| 12 Defaulted Monthly Payments at $4,868.34 each (April 2024 through March 2025) | $58,420.08 |
| 7 Defaulted Monthly Payments at $5,938.45 each (April 2025 through October 2025) | $41,569.15 |
| 4 Defaulted Monthly Payments at $4,753.91 each (November 2025 through February 2026) | $19,015.64 |
| Late Charges | $6,319.56 |
| Recoverable Balance | $28,990.15 |
| Suspense | $(1,118.43) |
| Total Delinquencies | $1,114,850.89 |

26-100863

32. A copy of the Relief from Stay-Real Estate and Cooperative Apartments ("Affidavit") is annexed hereto as **Exhibit "C"**.

33. Moreover, in view of the total debt due to Movant and in light of the Debtor's failure to make post-petition payments, Movant is no longer adequately protected.  The automatic stay must be vacated for cause pursuant to 11 U.S.C. § 362(d)(1).

34. As set forth in the Affidavit, as of February 10, 2026, the approximate debt due and owing to Movant equals $1,512,395.41.  The debt is accruing interest at a rate of 9.00000% per annum.

35. Based upon the Debtor's Schedule D, the Property has an estimated fair value of approximately $681,800.00.  A copy of Debtor's Schedule D is annexed hereto as **Exhibit "D"**. As indicated in paragraph 12 herein above, the total debt to Movant equals $1,512,395.41. As such, there is no dispute that the debt due to the Movant exceeds the value of the Property.  By the Debtor's own valuation, the estate has no equity in the Property sought to be foreclosed. Accordingly, relief from the automatic stay is also warranted under 11 U.S.C. § 362(d)(2).

36. The Debtor, Debtor's Attorney, the Chapter 13 Trustee and the Office of the United States Trustee have each been duly served with the within Notice of Motion, Affirmation, Exhibits and proposed Order Vacating Stay, as more fully set forth in the annexed affidavit of mailing.

37. Upon the entry of the Order Granting Relief, the Trustee shall cease to pay the unpaid arrears portion of claim number 6-1, filed by Movant.

38. No prior application has been made for the relief requested herein.

39. Debtor Kim Traub executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed.  Creditor,

26-100863

directly or through an agent, has possession of the promissory note.  Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

**WHEREFORE,** for the reasons set forth herein, Movant respectfully requests that its Motion for In Rem Relief be granted pursuant to 11 U.S.C. § 362(d)(4), such that any and all future filings under the Bankruptcy Code during the next two years by any person or entity with an interest in the Property, shall not operate as a stay as to its enforcement of its rights in and to 111 Hoover Road, Yonkers, NY 10710; or, in the alternative, for an order pursuant to 11 U.S.C. §§ 362(d)(1) & (2); granting relief from the automatic and for such further relief that this Court deems appropriate.

Dated:   <u>March 4, 2026</u>

<u>/s/Shari Barak</u>
Shari S. Barak
LOGS Legal Group LLP
Attorneys for PHH Mortgage Corporation as Servicer
for HSBC Bank USA, National Association, as
Trustee for Fremont Home Loan Trust 2005-B,
Mortgage-Backed Certificates, Series 2005-B
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000
Fax: (585) 247-7380

26-100863

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 4, 2026, 2026, a copy of Notice of Motion, Affirmation in Support, Exhibits and Proposed Order Granting Relief from the Automatic Stay was caused to be deposited in an enclosed, properly addressed post-paid envelope, and served by ordinary U.S. Mail, postage prepaid, and/or electronically upon the following:

Debtor
Kim Traub
111 Hoover Road
Yonkers, NY 10710

Attorney for Debtor
H. Bruce Bronson, Jr.
Bronson Law Offices, P.C.
480 Mamaroneck Avenue
Harrison, NY 10528-0023

Trustee
Thomas C. Frost
399 Knollwood Road, Suite 102
White Plains, NY 10603

United States Trustee
Office of the United States Trustee - NY
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004-1408

Michael L. Carey
RAS Law Firm, PLLC
13010 Morris Road, Suite 450
Alpharetta, GA 30004

Dated: March 4, 2026

_____
/s/Shari Barak

RLOGS Legal Group LLP
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000
Fax: (585) 247-7380
Email: logsecf@logs.com

26-100863

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

IN RE                                                    CHAPTER 13

KIM TRAUB A/K/A KIM M. TRAUB A/K/A                       CASE NO. 25-22974-dsj
AQUA BRIGHT A/K/A KIMBERLY TRAUB

                                                         JUDGE: David S. Jones

                        DEBTOR

### ORDER GRANTING RELIEF FROM
### THE AUTOMATIC STAY

**UPON** consideration of the Application of PHH Mortgage Corporation as Servicer for

HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-B,

Mortgage-Backed Certificates, Series 2005-B, ("Movant") dated March 4, 2026, and it

appearing that neither the Debtor, Debtor's Attorney, Chapter 13 Trustee nor the U.S. Trustee

have opposition to the motion brought by Movant, for in rem relief from the automatic stay

imposed in subsequent cases under 11 U.S.C. § 362(a), such that any and all future filings under

the Bankruptcy Code during the next two years by the Debtor herein, Kim Traub or any other

person or entity with an interest in the Property shall not operate as a stay as to Movant's

enforcement of its rights in and to 111 Hoover Road, Yonkers, NY 10710 (the "Property") and

after due and sufficient service and notice, the Court having held a hearing on the Motion on

April 15, 2026 and no opposition having been submitted; and, after due deliberation, the Court h

aving determined that the filing of the Debtor's bankruptcy petition was part of a scheme to delay

, hinder, and defraud creditors that has involved multiple bankruptcy filings by the

Debtor and affecting the Property; and good and sufficient cause appearing, including the failure

26-100863

of the Debtor to perform their duties as a debtor under the Bankruptcy Code in good faith in multiple bankruptcy cases affecting the Property, it is

**ORDERED** that the automatic stay, heretofore in effect pursuant to 11 U.S.C. § 362(a), is hereby vacated for cause pursuant to 11 U.S.C. § 362(d) as to Movant, its agents, assigns or successors in interest , so that Movant, its agents, assigns or successors in interest, may take any and all actions pursuant to the Note and Mortgage and applicable state law including but not limited to foreclose its mortgage on premises known as 111 Hoover Road, Yonkers, NY 10710 without further application to this Court, and it is further

**ORDERED,** that under 11 U.S.C. § 362(d)(4), and provided that this Order is recorded in conformity therewith, the automatic stay under 11 U.S.C. § 362(a) is terminated as to Movant's interest in the Property, and said Order shall be binding in any other case filed under the Bankruptcy Code purporting to affect the Property that is filed not later than two years after the date of this Order, such that the automatic stay under 11 U.S.C. § 362(a) shall not apply to Secured Creditor's interest in the Property; and it is further

**ORDERED** that in the event this case is converted to a case under any other chapter of the U.S. Bankruptcy Code, this Order will remain in full force and effect; and it is further

**ORDERED** upon the entry of the Order Granting Relief, the unpaid arrears portion of claim number 6-1, filed by Movant, shall be deemed withdrawn; and it is further

26-100863

**ORDERED** that the Movant shall promptly report to the Chapter 13 Trustee any surplus monies realized by any sale of the Property.

26-100863



**LOGS Legal Group LLP**
Attorneys at Law

175 Mile Crossing Boulevard
Rochester, New York 14624
Tel: (585) 247-9000 • Fax: (585) 247-7380

**Partners**
Gerald M. Shapiro (licensed in FL, IL)
David S. Kreisman (licensed in IL)
Jason Shapiro (licensed in FL, IL)

**Managing Attorney - NY**
John A. DiCaro

February 11, 2026

Chambers Hon. David S. Jones
United States Bankruptcy Court
300 Quarropas St
White Plains, NY 10601

RE:   Kim Traub a/k/a Kim M Traub a/k/a Aqua Bright a/k/a Kimberly Traub
      Chapter 13
      Case Number:  25-22974-DSJ
      LLG File Number:  26-100863

Dear Judge Jones;

Enclosed please find one Chambers' copy of the Notice of Motion and Motion for Relief from the Automatic Stay in the above bankruptcy case.  This motion is scheduled to be heard on April 15, 2026 at 10:00 am.

Very truly yours,

Michael J. Chatwin
Robert W. Griswold
Shari S. Barak

Enclosures

# EXHIBIT

## A

# ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)
### (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**February 23, 2005**　　　　　**BREA, CA 92821**
　　　　[Date]　　　　　　　　　　　　　　[City]　　　　　　　　　　　　　　　　[State]
**111 HOOVER ROAD　YONKERS, NY 10710**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **391,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **FREMONT INVESTMENT & LOAN**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **7.450** %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on **April 1, 2005**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **March 1, 2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **2727 EAST IMPERIAL HIGHWAY, BREA CA 92821**

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ **2,720.56** . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day Lookback) - Single Family - Freddie Mac UNIFORM INSTRUMENT**

VMP-815N (0404)　　　　　　　**Form 5520 3/04**
　®
　　VMP Mortgage Solutions (800)521-7291

Page 1 of 4　　　　　　　　　　Initials:



## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of **March 1, 2007**, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available 45 days before each Change Date is called the "Current Index.'

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six and Ninety-Nine Hundredths** percentage points ( **6.9900** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.450** % or less than **7.4500** %. Thereafter, my interest rate will never be increased or decreased on any subsequent Change Date by more than **1.5000** from the rate of interest I have been paying for the preceding period. My interest rate will never be greater than **14.4500** % or less than **7.4500** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY
### *SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF*

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a Prepayment. When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

1815N2MS    01/01                    Page 2 of 4                    Initials:

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **6.0** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:



**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## ∗SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF∗

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
**KIM TRAUB**                     -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                  -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                  -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                  -Borrower                                         -Borrower


*[Sign Original Only]*

Pay to the order of
without recourse.

Fremont Investment & Loan
Steven K. Patton
Sr. Vice President

# PREPAYMENT RIDER TO NOTE

This Prepayment Rider is made this **23rd** day of **February, 2005** , and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note ("Note") made by the undersigned (the "Borrower") to

**FREMONT INVESTMENT & LOAN**

(the "Lender") of the same date and covering the property located at:

**111 HOOVER ROAD    YONKERS, NY 10710**

(Property Address)

## BORROWER'S RIGHT TO PREPAY
### This Prepayment Rider Supersedes Section 5 of the Note

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full or partial prepayment; however, the Note Holder may charge me for the privilege of prepayment. If more than 20% of the original principal amount of this note is prepaid in any 12-month period within **2** years after the date of this loan, I agree to pay a prepayment charge equal to six months interest on the amount prepaid which is in excess of 20% of the original principal amount of this Note. If I make prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make full prepayment at any time.

**KIM TRAUB**                                    Date                                                    Date

Date                                                    Date

MSPPY1 XTG 10/28/04

*463190228MTG1*

| Control Number | Instrument Type |
|---|---|
| **463190228** | **MTG** |



## WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE
### (THIS PAGE FORMS PART OF THE INSTRUMENT)
### *** DO NOT REMOVE ***

**THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:**
**TYPE OF INSTRUMENT:** <u>MTG - MORTGAGE</u>
**FEE PAGES:  25        TOTAL PAGES:  25**

### RECORDING FEES

| | |
|---|---|
| STATUTORY CHARGE | $6.00 |
| RECORDING CHARGE | $75.00 |
| RECORD MGT. FUND | $19.00 |
| RP 5217 | $0.00 |
| TP-584 | $0.00 |
| CROSS REFERENCE | $0.00 |
| MISCELLANEOUS | $0.00 |
| **TOTAL FEES PAID** | **$100.00** |

### MORTGAGE TAXES

| | |
|---|---|
| MORTGAGE DATE | 2/23/2005 |
| MORTGAGE AMOUNT | $391,000.00 |
| EXEMPT | Yes |
| COUNTY TAX | $977.50 |
| YONKERS TAX | $1,955.00 |
| BASIC | $1,955.00 |
| ADDITIONAL | $1,143.00 |
| MTA | $977.50 |
| SPECIAL | $0.00 |
| **TOTAL PAID** | **$7,008.00** |

### TRANSFER TAXES

| | |
|---|---|
| CONSIDERATION | $0.00 |
| TAX PAID | $0.00 |
| TRANSFER TAX # | |

**RECORDING DATE: 12/27/2006**
**TIME: 09:36:00**

**SERIAL NUMBER:  CX44032**
**DWELLING: 1-2 Family**

THE PROPERTY IS SITUATED  IN
WESTCHESTER COUNTY, NEW YORK IN THE:
CITY OF YONKERS

WITNESS MY HAND AND OFFICIAL SEAL

**TIMOTHY C. IDONI**
**WESTCHESTER COUNTY CLERK**

Record & Return to:
**FREMONT INVESTMENT & LOAN**
**PO BOX 34078**

**FULLERTON, CA 92834**

Return To:
**FREMONT INVESTMENT & LOAN**
**P.O. BOX 34078**
**FULLERTON, CA 92834-34078**

Prepared By:
**BARBARA LICON**

———————— [Space Above This Line For Recording Data] ————————————————

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

(A) **"Security Instrument."** This document, which is dated **February 23, 2005**
together with all Riders to this document, will be called the "Security Instrument."
(B) **"Borrower."** **KIM TRAUB, UNMARRIED**

whose address is **111 HOOVER ROAD , YONKERS, NY 10710**
sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under
the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE
MORTGAGEE OF RECORD.**
(D) **"Lender."** **FREMONT INVESTMENT & LOAN**

will be called "Lender." Lender is a corporation or association which exists under the laws of
**CALIFORNIA** . Lender's address is
**2727 EAST IMPERIAL HIGHWAY, BREA CA 92821**

**NEW YORK** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**      Form 3033 1/01

**VMP®-6A(NY)** (0005).01
Page 1 of 17                    Initials: _KT_
    VMP MORTGAGE FORMS - (800)521-7291

Sect: 3
BK: 3196
L7: 6

(E) **"Note."** The note signed by Borrower and dated **February 23, 2005**                     , will be called the "Note." The Note shows that I owe Lender **Three Hundred Ninety-One Thousand and No/100** ---------------------------------------------------------------

Dollars (U.S. $        **391,000.00**        )

plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by **March 1, 2035**

(F) **"Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

(G) **"Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) **"Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
|---|---|---|
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) **"Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) **"Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) **"Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

(N) **"Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) **"Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) **"RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Initials: _____

*VMP*®-6A(NY) (0005).01                    Page 2 of 17                    Form 3033 1/01

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at

**111 HOOVER RD**                                                                                 [Street]
**YONKERS**                                     [City, Town or Village] , New York **10710**        [Zip Code].
This Property is in **WESTCHESTER**                                     County. It has the following legal
description:

**SEE ATTACHED LEGAL DESCRIPTION**

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

VMP-6A(NY) (0005).01                          Page 3 of 17                          Initials: ___           Form 3033 1/01

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

Initials: _KT_

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior

Initials: _K T_

to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

Initials: _____

**‌-6A(NY)** (0005).01                          Page 7 of 17                          **Form 3033 1/01**

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

Initials: _K.T_

VMP-6A(NY) (0005).01        Page 8 of 17        Form 3033 1/01

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the

Initials: _____

-6A(NY) (0005).01                   Page 10 of 17                   Form 3033 1/01

Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

### 12. Continuation of Borrower's Obligations And of Lender's Rights.
### (a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

### (b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

### 13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations. If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing

-6A(NY) (0005).01                    Page 11 of 17                    Initials: _____                    Form 3033 1/01

any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

Initials: _K T_

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment. .

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which

will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

   **21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

   I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

   I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

   Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

   **22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

   **If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another**

Initials: _JCT_

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

Initials: _____

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____

_____ (Seal)
KIM TRAUB                                         -Borrower

_____ (Seal)
                                                   -Borrower

_____

_____ (Seal)          _____ (Seal)
                                 -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                          -Borrower

VMP-6A(NY) (0005).01                    Page 16 of 17                         Form 3033 1/01

**STATE OF NEW YORK,**                                      County ss: *Kings.*

On the *23* day of *February 2005* before me, the undersigned, a notary
public in and for said state, personally appeared

*Kim Traub.*

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or
the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information:

YAN SHVARTS
NOTARY PUBLIC STATE OF NEW YORK
NO 01SH6113952
QUALIFIED IN RICHMOND COUNTY
COMMISSION EXPIRES ON 8-9-08

VMP-6A(NY) (0005).01                   Page 17 of 17        Initials: ___        Form 3033 1/01

# HAWTHORNE ABSTRACT CORP. as agent for
## Old Republic National Title Insurance Company

### LOAN POLICY

### SCHEDULE A DESCRIPTION

**PARCEL I :**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND,SITUATE,LYING AND BEING IN THE CITY OF YONKERS,COUNTY OF WESTCHESTER AND STATE OF NEW YORK,BEING KNOWN AND DESIGNATED AS LOT #20 IN BLOCK 5.ON A CERTAIN MAP ENTITLED,"PLAN OF HOMEFIELD,SECTION 6.ESTATE OF WILLIAM B.RICE,YONKERS,NEW YORK,DEVELOPED BY THE HOMELAND COMPANY"MAD BY WALTER W.WEBERE,C.E.AND S.JULY 1,1924 AND FILED IN THE REGISTER'S OFFICE OF WESTCHESTER COUNTY (NOW WESTCHESTER COUNTY CLERK'S OFFICE,DIVISION OF LAND RECORDS) ON OCTOBER 30,1924 AS MAP #2675,SAID LOT BEING MORE PARTICULARLY BOUNDED AND DESCRIBED ACCORDING TO SAID MAP,AS FOLLOWS:

BEGINNING AT A POINT ON THE WESTERLY SIDE OF HOOVER ROAD (FORMERLY QUINCY ROAD) DISTANT NORTHERLY 300 FEET FROM THE CORNER FORMED BY THE INTERSECTION OF THE WESTERLY SIDE OF HOOVER ROAD WITH THE NORTHERLY SIDE OF ODELL ROAD,WHICH POINT OF BEGINNING IS ALSO THE NORTHEAST CORNER OF LOT NO.19:

RUNNING THENCE WESTERLY ALONG THE NORTHERLY SIDE OF LOT NO.18,100 FEET;

THENCE NORTHERLY PARALLEL WITH THE WESTERLY SIDE OF HOOVER ROAD,40 FEET;

THENCE EASTERLY PARALLEL WITH THE FIRST DESCRIBED LINE,100 FEET TO THE WESTERLY SIDE OF HOOVER ROAD; AND

THENCE SOUTHERLY ALONG THE SAME,40 FEET TO THE POINT OR PLACE OF BEGINNING.

THE AFORESAID PREMISES BEING KNOWN AND DESIGNATED ON THE OFFICIAL TAX MAP OF THE CITY OF YONKERS,AS SECTION 3 BLOCK 319 6 LOT 6.

**PARCEL II:**

ALL THAT CERTAIN PLOT,PIECE OR PARCEL OF LAND,SITUATE,LYING AND BEING IN THE CITY OF YONKERS,COUNTY OF WESTCHESTER AND STATE OF NEW YORK,BEING KNOWN AND DESIGNATED UPON THE OFFICIAL TAX MAP OF THE CITY OF YONKERS AS SECTION 3 BLOCK 3196 LOT 5.BEING ALSO DESCRIBED AS LOT 21 IN BLOCK 5 ON A CERTAIN MAP ENTITLED,"PLAN OF "PLAN OF HOMEFIELD,SECTION 6.ESTATE OF WILLIAM B.RICE,YONKERS,NEW YORK,DEVELOPED BY THE

Schedule A  Page 2 of 3

# HAWTHORNE ABSTRACT CORP. as agent for
## Old Republic National Title Insurance Company

### LOAN POLICY

### SCHEDULE A DESCRIPTION

HOMELAND COMPANY"MAD BY WALTER W.WEBER,C.E.AND S.JULY 1 1924 AND FILED IN THE REGISTER'S OFFICE OF WESTCHESTER COUNTY (NOW WESTCHESTER COUNTY CLERK'S OFFICE,DIVISION OF LAND RECORDS) ON OCTOBER 30,1924 AS MAP #2675.

PARCEL III:

ALL THAT CERTAIN PLOT,PIECE OR PARCEL OF LAND,SITUATE,LYING AND BEING IN THE CITY OF YONKERS,COUNTY OF WESTCHESTER AND STATE OF NEW YORK,BEING KNOWN AND DESIGNATED AS THE NORTHERLY ONE-HALF OF LOT NO.19 IN BLOCK 5 ON A CERTAIN MAP ENTITLED,"PLAN OF "PLAN OF HOMEFIELD,SECTION 6.ESTATE OF WILLIAM B.RICE,YONKERS,NEW YORK,DEVELOPED BY THE HOMELAND COMPANY"MAD BY WALTER W.WEBER,C.E.AND S.JULY 1,1924 AND FILED IN THE REGISTER'S OFFICE OF WESTCHESTER COUNTY (NOW WESTCHESTER COUNTY CLERK'S OFFICE,DIVISION OF LAND RECORDS) ON OCTOBER 30,1924 AS MAP #2675.

THE AFORESAID PREMISES BEING KNOWN AND DESIGNATED ON THE OFFICIAL TAX MAP OF THE CITY OF YONKERS AS SECTION 3 BLOCK 3196 LOT 7.

Schedule A  Page 3 of 3

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this **23rd**      day of **February**           **2005**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
**FREMONT INVESTMENT & LOAN·**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
**111 HOOVER ROAD   YONKERS, NY 10710**

[Property Address]

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of   **7.450**                 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the **first**      day of **March**           **2007**      , and on that day every  **sixth**       month thereafter. Each date on which my interest rate could change is called a "Change Date."

**MULTISTATE ADJUSTABLE RATE RIDER** - Single Family

-899R (0009)                  1/01
Page 1 of 5           Initials: ZT
VMP MORTGAGE FORMS - (800)521-7291

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is: **the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the WALL STREET JOURNAL.**

The most recent Index figure available as of the date:   ☒ 45 days   ☐ _____ before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six and Ninety-Nine Hundredths** percentage points ( **6.9900** %) to the Current Index. The Note Holder will then round the result of this addition to the   ☒ Nearest   ☐ Next Highest   ☐ Next Lowest **One-Eighth**
( **0.125** %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

☐ **Interest-Only Period**

The "Interest-only Period" is the period from the date of this Note through **N/A**        .
For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

The "Amortization Period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials: _____

**(D) Limits on Interest Rate Changes**
(**Please check appropriate boxes; if no box is checked, there will be no maximum limit on changes.**)

☐ (1) There will be no maximum limit on interest rate changes.

☒ (2) The interest rate I am required to pay at the first Change Date will not be greater than **10.450** % or less than **7.4500** %.

☒ (3) My interest rate will never be increased or decreased on any subsequent Change Date by more than **One and One-Half** percentage points ( **1.5000** %) from the rate of interest I have been paying for the preceding period.

☒ (4) My interest rate will never be greater than **14.4500** %, which is called the "Maximum Rate."

☒ (5) My interest rate will never be less than **7.4500** %, which is called the "Minimum Rate."

☒ (6) My interest rate will never be less than the initial interest rate.

☒ (7) The interest rate I am required to pay at the first Change Date will not be greater than **10.450** % or less than **7.4500** %. Thereafter, my interest rate will never be increased or decreased on any subsequent Change Date by more than **One and One-Half** percentage points ( **1.5000** %) from the rate of interest I have been paying for the preceding period.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Initials: _K I_

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: _____

VMP-899R (0009)                    Page 4 of 5

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
KIM TRAUB                -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

VMP-899R (0009)                Page 5 of 5

# WESTCHESTER COUNTY CLERK RECORDING SHEET

110 Dr. Martin Luther King, Jr. Boulevard    White Plains, NY 10601

--------- THIS FORM MUST BE COMPLETED AND SUBMITTED WITH EACH DOCUMENT ---------

This page is part of the instrument; the County Clerk will rely on the information
provided on this page for purposes of indexing this document.
To the best of the submitter's knowledge the information contained on this
Recording Sheet is consistent with the information contained in the attached document.

**SUBMITTER INFORMATION:**

Title Number: HO51199

Company: Hawthorne Abstract Corp.

Address: 55 Washington St, Suite 851

City Brooklyn    State: NY    Zip: 11201    Telephone:

Attention:

| | | |
|---|---|---|
| Document type: Mortgage | # of pages - 24 | |

Mortgage Amount  On page ____ of document

$_____

OR

Consideration/Conveyance Amt:

$_____

**Dwelling Type:**  For Mortgage Only

On page 15 of document

☑ 1 to 2 family

☐ 1 to 6 family

☐ Not 1 to 6 family

1st party name(s) (i.e. grantor/mortgagor)
On page 1 of document    Business Entity

Kim Traub    ☐
_____  ☐
_____  ☐
_____  ☐
_____  ☐

Check if submitted:

☐ RP-5217 - ☐ $75 ☐ $165
☐ TP-584 - Type of property conveyed [1 through 8] _____
☐ TP-584.1    ☐ IT-2663

2nd party name(s) (i.e. grantee/mortgagee)
On page 1 of document    Business Entity

Mers as nominee for    ☐
Fremont Investment    ☐
& Loan.    ☐
_____  ☐
_____  ☐

**TAXES PAID:**

| | Amount | Reference # Or Check # |
|---|---|---|
| Mortgage Tax | $_____ | _____ |
| Transfer Tax | $_____ | _____ |
| Mansion Tax | $_____ | _____ |

**RECORDING FEES PAID:**    Amount    Reference # or Check #

$_____    _____

Tax designation  (Section, Block & Lot)
On page 1 of document

Sect. 3 Bk: 3196 Lt: 6

**MORTGAGE TAX AFFIDAVITS SUBMITTED:**

☐ 252  ☐ 255  ☐ 280  Other: _____
☐ 253  ☐ 260  ☐ 339-ee

City(ies) or Town(s) for Property Description
On page 3 of document

Yonkers

Cross Reference(s):    On page ____ of document

Property Description -- If required, check the one contained within the document.

☑ Metes & bounds    On page 18 of document

☐ Lot number on map filed in the Office of the County Clerk

☐ Refer to deed recorded in the Office of the County Clerk

Record and Return To:

Hawthorne Abstract Corp.
55 Washington St, Suite 851
Brooklyn  NY  11201

LandRecords/Coversheet.doc    revised 06/30/05

*472690057ASS1*

| Control Number | Instrument Type |
|---|---|
| **472690057** | **ASS** |



## WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE
## (THIS PAGE FORMS PART OF THE INSTRUMENT)
### *** DO NOT REMOVE ***

**THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:**
TYPE OF INSTRUMENT: <u>ASS - ASSIGNMENT</u>
FEE PAGES:  5        TOTAL PAGES:  5

### RECORDING FEES

| | |
|---|---|
| STATUTORY CHARGE | $6.00 |
| RECORDING CHARGE | $15.00 |
| RECORD MGT. FUND | $19.00 |
| RP 5217 | $0.00 |
| TP-584 | $0.00 |
| CROSS REFERENCE | $0.50 |
| MISCELLANEOUS | $0.00 |
| **TOTAL FEES PAID** | **$40.50** |

### MORTGAGE TAXES

| | |
|---|---|
| MORTGAGE DATE | |
| MORTGAGE AMOUNT | $0.00 |
| EXEMPT | |
| COUNTY TAX | $0.00 |
| YONKERS TAX | $0.00 |
| BASIC | $0.00 |
| ADDITIONAL | $0.00 |
| MTA | $0.00 |
| SPECIAL | $0.00 |
| **TOTAL PAID** | **$0.00** |

### TRANSFER TAXES

| | |
|---|---|
| CONSIDERATION | $0.00 |
| TAX PAID | $0.00 |
| TRANSFER TAX # | |

**RECORDING DATE: 10/2/2007**
**TIME: 10:27:00**

SERIAL NUMBER:
DWELLING:

THE PROPERTY IS SITUATED IN
WESTCHESTER COUNTY, NEW YORK IN THE:
CITY OF YONKERS

WITNESS MY HAND AND OFFICIAL SEAL

*[signature]*

TIMOTHY C. IDONI
WESTCHESTER COUNTY CLERK

Record & Return to:
**DRUCKMAN & SINEL**
**242 DREXEL AVE**

**WESTBURY, NY 11590**

RECORD AND RETURN TO:                                    Section:    335.00
DRUCKMAN & SINEL                                          Block:     3196
242 Drexel Avenue                                        Lot:       6
Westbury, New York 11590                                 County:    WESTCHESTER

## ASSIGNMENT OF MORTGAGE

**KNOW THAT**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FREMONT INVESTMENT & LOAN,** having its principal office for the conduct of business at 2727 East Imperial Highway, Brea, California 92821.

Assignor(s),

in consideration of  TEN AND NO/100     ($10.00)

paid by

**FREMONT INVESTMENT & LOAN,** having its principal place of business at 2727 East Imperial Highway, Brea, California 92821.

Assignee(s),

hereby sells, assigns and transfers unto Assignee, its successors and assigns, all of its right, title and interest in and to the Mortgage made by KIM TRAUB to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FREMONT INVESTMENT & LOAN for $391,000.00 dated February 23, 2005 and recorded February 27, 2006 in Control No.: 463190228 in the office of the Clerk/Register of the County of WESTCHESTER covering premises
111 HOOVER ROAD, YONKERS, NEW YORK 10710
TAX MAP:  SECTION: 3          LOT: 6      BLOCK: 3196

**TOGETHER WITH** the bond, note or obligation described in said mortgage and the money to or to become due thereon.

This Assignment is not subject to the requirement of Section 275 of the Real Property law, because it is an assignment within the secondary mortgage market.

**IN WITNESS WHEREOF** the assignor has duly executed this assignment, effective as of

October 1, 2006

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FREMONT INVESTMENT & LOAN**

BY: _____

Cynthia Van Patten
V.P. Mortgage Electronic Registration System, Inc.
Fremont Investment & Loan

STATE OF **CALIFORNIA**
COUNTY OF **SAN BERNARDINO** .:.

On the *12th* day of *April*        , in the year *2007* , before me, the undersigned, a notary public in and for said state, personally appeared   *Cynthia Van Patten*
, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

T. L. TOMPKINS
Commission # 1507750
Notary Public - California
Orange County
My Comm. Expires Aug 16, 2008

**First American**
**Title Insurance Company**
NATIONAL DEFAULT TITLE SERVICES

## SCHEDULE A

## DESCRIPTION OF MORTGAGED PREMISES

█████████████

### PARCEL I

*ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND*, situate, lying and being in the City of Yonkers, County of Westchester and State of New York, being known and designated as Lot #20 in Block 5, on a certain map entitled, "Plan of Homefield, Section 6, Estate of William B. Rice, Yonkers, New York, developed by the Homeland Company" made by Walter W. Weber, C.E. and S., July 1, 1924 and filed in the Register's Office of Westchester County (now Westchester County Clerk's Office, Division of Land Records) on October 30, 1924 as Map #2675, said lot being more particularly bounded and described according to said map, as follows:

*BEGINNING* at a point on the westerly side of Hoover Road (formerly Quincy Road) distant northerly 300 feet from the corner formed by the intersection of the westerly side of Hoover Road with the northerly side of Odell Road, which point of beginning is also the northeast corner of Lot No. 19;

*RUNNING THENCE* westerly along the northerly side of Lot No. 19, 100 feet;

*THENCE* northerly parallel with the westerly side of Hoover Road, 40 feet;

*THENCE* easterly parallel with the first described line, 100 feet to the westerly side of Hoover Road; and

*THENCE* southerly along the same, 40 feet to the point or place of *BEGINNING.*

The aforesaid premises being known and designated on the official Tax Map of the City of Yonkers, as Section 3 Block 3196 Lot 6.

**First American**
**Title Insurance Company**
NATIONAL DEFAULT TITLE SERVICES

## SCHEDULE A

## DESCRIPTION OF MORTGAGED PREMISES

PARCEL II:

*ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND*, situate, lying and being in the City of Yonkers, County of Westchester and State of New York, being known and designated upon the Official Tax Map of the City of Yonkers as Section 3 Block 3196 Lot 5.

*BEING ALSO DESCRIBED* as Lot 21 in Block 5 on a certain map entitled, "Map of Homefield, Section 6, Estate of William B. Rice, Yonkers, New York, July 1, 1924, developed by the Homeland Company", made by Walter W. Weber, Surveyor dated July 1, 1924 and filed in the Office of the Register of Westchester County (now the County Clerk's Office of Westchester County, Division of Land Records) on October 30, 1925, as Map No. 2675.

PARCEL III:

*ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND*, situate, lying and being in the City of Yonkers, County of Westchester and State of New York, being known and designated as the northerly one-half of Lot No. 19 in Block 5 on a certain map entitled "Plan of Homefield, Section 6, Estate of William B. Rice, Yonkers, N.Y., developed by the Homeland Company", made by Walter W. Weber, C.E. & S., July 1, 1924 and filed in the Office of the Register (now clerk, Division of Land Records) in the County of Westchester on October 30, 1924, as Map No. 2675.

The aforesaid premises being known and designated on the Official Tax Map of the City of Yonkers, as Section 3 Block 3196 Lot 7.

## NOTE: SEE SCHEDULE D HEREIN

The Office of the Westchester County Clerk: This page is part of the instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.

*580653522ASS0010*

# Westchester County Recording & Endorsement Page

## Submitter Information

| | | | |
|---|---|---|---|
| Name: | RASPL NATIONAL NON-DEED DOCS | Phone: | (561) 241-6901 |
| Address 1: | 6409 Congress Avenue, Suite 100 | Fax: | (555) 555-5555 |
| Address 2: | | Email: | tmacarounis@rastitle.com |
| City/State/Zip: | Boca Raton FL 33487 | Reference for Submitter: | 6076292-RASPL NATIONAL NON-DEE |

## Document Details

| | | | | | |
|---|---|---|---|---|---|
| Control Number: | **580653522** | Document Type: | **Assignment (ASS)** | | |
| Package ID: | 2018030600230001000 | Document Page Count: | **2** | Total Page Count: | **3** |

## Parties

☐ Additional Parties on Continuation page

| | 1st PARTY | | | 2nd PARTY | |
|---|---|---|---|---|---|
| 1: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | - Other | 1: | HSBC BANK USA NA | - Other |
| 2: | FREMONT INVESTMENT & LOAN | - Other | 2: | | |

## Property

☐ Additional Properties on Continuation page

| | | |
|---|---|---|
| Street Address: | 111 HOOVER RD | Tax Designation: 3-3196-6 |
| City/Town: | YONKERS | Village: |

## Cross- References

☐ Additional Cross-Refs on Continuation page

| | | | |
|---|---|---|---|
| 1: 463190228 | 2: | 3: | 4: |

## Supporting Documents

### Recording Fees

| | |
|---|---|
| Statutory Recording Fee: | $40.00 |
| Page Fee: | $15.00 |
| Cross-Reference Fee: | $0.50 |
| Mortgage Affidavit Filing Fee: | $0.00 |
| RP-5217 Filing Fee: | $0.00 |
| TP-584 Filing Fee: | $0.00 |
| **Total Recording Fees Paid:** | **$55.50** |

### Transfer Taxes

| | |
|---|---|
| Consideration: | $0.00 |
| Transfer Tax: | $0.00 |
| Mansion Tax: | $0.00 |
| Transfer Tax Number: | |

### Mortgage Taxes

| | |
|---|---|
| Document Date: | |
| Mortgage Amount: | |
| Basic: | $0.00 |
| Westchester: | $0.00 |
| Additional: | $0.00 |
| MTA: | $0.00 |
| Special: | $0.00 |
| Yonkers: | $0.00 |
| **Total Mortgage Tax:** | **$0.00** |
| Dwelling Type: | Exempt: ☐ |
| Serial #: | |

RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK

Recorded:        03/08/2018 at 11:42 AM

Control Number:   **580653522**

Witness my hand and official seal

Timothy C.Idoni
Westchester County Clerk

### Record and Return To

☐ Pick-up at County Clerk's office

**RAS TITLE**
**6409 CONGRESS AVE STE 100**

**BOCA RATON, FL 33487**

Recording Requested By:
OCWEN LOAN SERVICING, LLC

When Recorded Return To:
OCWEN LOAN SERVICING, LLC
1795 INTERNATIONAL WAY
IDAHO FALLS, ID   83402

## CORPORATE ASSIGNMENT OF MORTGAGE

**Westchester, New York**



Date of Assignment: December 20th, 2017

Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR FREMONT INVESTMENT & LOAN, ITS SUCCESSORS AND/OR ASSIGNS at PO BOX 2026 FLINT MI 48501,1901 E VOORHEES ST, STE C, DANVILLE, IL   61834

Assignee: HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR FREMONT HOME LOAN TRUST 2005-B, MORTGAGE-BACKED CERTIFICATES, SERIES 2005-B at C/O OCWEN LOAN SERVICING, LLC., 1661 WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL   33409

Executed By: KIM TRAUB, UNMARRIED To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR FREMONT INVESTMENT & LOAN, ITS SUCCESSORS AND/OR ASSIGNS

Date of Mortgage: 02/23/2005 Recorded: 12/27/2006 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 463190228 In the County of Westchester, State of New York.

Section/Block/Lot 3-3196-6

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC has a physical address at 1901 E Voorhees Street, Suite C, Danville, IL 61834 and a mailing address at P.O. BOX 2026, FLINT, MI 48501-2026

Property Address: 111 HOOVER RD, YONKERS, NY 10710 CITY OF YONKERS

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $391,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.   IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR FREMONT INVESTMENT & LOAN, ITS SUCCESSORS AND/OR ASSIGNS
On **DEC 2 2 2017**

By: _____
Name: Jamell Strachan,
Title: Assistant Secretary

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF FLORIDA
COUNTY OF PALM BEACH

On the ___22nd___ day of ___December___ in the year ___2017___ before me, the
undersigned, personally appeared Jamell Strachan, Assistant Secretary, **personally known to me** or proved to me on
the basis of satisfactory evidence to be the individual(s) whose name(s) **is**(are) subscribed to the within instrument and
acknowledged to me that **he**/she/they executed the same in **his**/her/their capacity(ies), and that by **his**/her/their
signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the
instrument, and that such individuals(s) made such appearance before the undersigned in the County of PALM BEACH,
State of FLORIDA.

WITNESS my hand and official seal,

_____
     Shiline King
Notary Expires:    SEP 1 8 2020
State of FLORIDA County of PALM BEACH

Notary Public State of Florida
Shiline King
My Commission GG 031114
Expires 09/18/2020

(This area for notarial seal)

RECORD AND RETURN TO:
FIRST AMERICAN TITLE
P.O. BOX 27670
SANTA ANA, CA  92799-7670
ATTN: LMTS

Tax Parcel No.:

_____   [Space Above This Line for Recording Data] _____

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

**Original Recorded Date: MARCH 1, 2005**

This Loan Modification Agreement ("Agreement"), made this    26TH day of  JULY, 2007           ,
between   **KIM TRAUB**

("Borrower") and **FREMONT INVESTMENT & LOAN**

("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated **FEBRUARY 28, 2005**     and recorded in
_____, of the          Official          Records of
                                         [Name of Records]
**WESTCHESTER COUNTY, NEW YORK**                 and (2) the Note, bearing the same date as,
          [County and State, or other Jurisdiction]
and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**111 HOOVER ROAD, YONKERS, NEW YORK 10710**
                         [Property Address]

the real property described being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF;**

**THE REFERENCED PROPERTY IS OR WILL BE IMPROVED WITH A ONE OR TWO FAMILY HOME OR DWELLING.**

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument        Form 3179  1/01 (rev. 6/06)
FAND# 3179 Rev. 02-09-07                                                            *(page 1 of 4)*

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1.  As of **JULY 1, 2007**                , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $        **420,522.47**        , consisting of the amount(s) loaned to Borrower by Lender and interest capitalized to date in the amount of U.S. $        **0.00**        .

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of        **9.000**        %, from   **JULY 1, 2007**        . Borrower promises to make monthly payments of principal and interest of U.S. $        **3,441.94**        , beginning on the   **1ST**   day of **AUGUST, 2007**        , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of        **9.000**        % will remain in effect until principal and interest is paid in full. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may be entitled. If on   **MARCH 01, 2035**        (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

    Borrower will make such payments at   **3110 GUASTI ROAD, SUITE 500 ONTARIO, CALIFORNIA 91761**        or at such other place as Lender may require.

3.  If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

    (b)  all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument        Form 3179  1/01 (rev. 8/01)
FAND# 3179-2.A Rev. 01-15-04                                                        *(page 2 of 4)*

5.   the Borrower has, since inception of this loan but prior to this Agreement, received a discharge in Chapter 7 bankruptcy, and there having been no valid reaffirmation of the underlying debt, in entering into this Agreement, the Lender is not attempting to re-establish any personal liability for the underlying debt.

6.   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.


FREMONT INVESTMENT & LOAN

                                                                          -Lender

By:_____

Kim Trauh                                                        7-27-07

KIM TRAUH                                                        -Borrower

111 HOOVER ROAD
YONKERS, NEW YORK 10710
FREMONT INVESTMENT & LOAN

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____ _Kim Traub_ _____    7-27-07
Borrower                                                                                          Date
KIM TRAUB


_____       _____
Borrower                                                                                          Date


_____       _____
Borrower                                                                                          Date


_____       _____
Borrower                                                                                          Date


_____       _____
Borrower                                                                                          Date


_____       _____
Borrower                                                                                          Date


FAND# FAND033 Rev. 06-11-03

TRAUB
111 HOOVER ROAD
YONKERS, NEW YORK 10710
FREMONT INVESTMENT & LOAN

## ERRORS AND OMISSIONS
## COMPLIANCE AGREEMENT

In consideration of
**FREMONT INVESTMENT & LOAN**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_Kim Traub_                                                                7-27-07
KIM TRAUB                                                                  Date

_____                                          _____
                                                                          Date

_____                                          _____
                                                                          Date

_____                                          _____
                                                                          Date

_____                                          _____
                                                                          Date

_____                                          _____
                                                                          Date

FANDY FAND034 Rev. 06-18-02

# HAWTHORNE ABSTRACT CORP. as agent for
## Old Republic National Title Insurance Company

### LOAN POLICY

### SCHEDULE A DESCRIPTION



**PARCEL I :**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND,SITUATE,LYING AND BEING IN THE CITY OF YONKERS,COUNTY OF WESTCHESTER AND STATE OF NEW YORK,BEING KNOWN AND DESIGNATED AS LOT #20 IN BLOCK 5.ON A CERTAIN MAP ENTITLED,"PLAN OF HOMEFIELD,SECTION 6.ESTATE OF WILLIAM B.RICE,YONKERS,NEW YORK,DEVELOPED BY THE HOMELAND COMPANY"MAD BY WALTER W.WEBERE,C.E.AND S.JULY 1,1924 AND FILED IN THE REGISTER'S OFFICE OF WESTCHESTER COUNTY (NOW WESTCHESTER COUNTY CLERK'S OFFICE,DIVISION OF LAND RECORDS) ON OCTOBER 30,1924 AS MAP #2675,SAID LOT BEING MORE PARTICULARLY BOUNDED AND DESCRIBED ACCORDING TO SAID MAP,AS FOLLOWS:

BEGINNING AT A POINT ON THE WESTERLY SIDE OF HOOVER ROAD (FORMERLY QUINCY ROAD) DISTANT NORTHERLY 300 FEET FROM THE CORNER FORMED BY THE INTERSECTION OF THE WESTERLY SIDE OF HOOVER ROAD WITH THE NORTHERLY SIDE OF ODELL ROAD,WHICH POINT OF BEGINNING IS ALSO THE NORTHEAST CORNER OF LOT NO.19:

RUNNING THENCE WESTERLY ALONG THE NORTHERLY SIDE OF LOT NO.18,100 FEET;

THENCE NORTHERLY PARALLEL WITH THE WESTERLY SIDE OF HOOVER ROAD,40 FEET;

THENCE EASTERLY PARALLEL WITH THE FIRST DESCRIBED LINE,100 FEET TO THE WESTERLY SIDE OF HOOVER ROAD; AND

THENCE SOUTHERLY ALONG THE SAME,40 FEET TO THE POINT OR PLACE OF BEGINNING.

THE AFORESAID PREMISES BEING KNOWN AND DESIGNATED ON THE OFFICIAL TAX MAP OF THE CITY OF YONKERS,AS SECTION 3 BLOCK 319 6 LOT 6.

**PARCEL II:**

ALL THAT CERTAIN PLOT,PIECE OR PARCEL OF LAND,SITUATE,LYING AND BEING IN THE CITY OF YONKERS,COUNTY OF WESTCHESTER AND STATE OF NEW YORK,BEING KNOWN AND DESIGNATED UPON THE OFFICIAL TAX MAP OF THE CITY OF YONKERS AS SECTION 3 BLOCK 3196 LOT 5.BEING ALSO DESCRIBED AS LOT 21 IN BLOCK 5 ON A CERTAIN MAP ENTITLED,"PLAN OF "PLAN OF HOMEFIELD,SECTION 6.ESTATE OF WILLIAM B.RICE,YONKERS,NEW YORK,DEVELOPED BY THE

Schedule A  Page 2 of 3

# HAWTHORNE ABSTRACT CORP. as agent for
## Old Republic National Title Insurance Company

### LOAN POLICY

### SCHEDULE A DESCRIPTION



HOMELAND COMPANY"MAD BY WALTER W.WEBER,C.E.AND S.JULY 1 1924 AND FILED IN THE REGISTER'S OFFICE OF WESTCHESTER COUNTY (NOW WESTCHESTER COUNTY CLERK'S OFFICE,DIVISION OF LAND RECORDS) ON OCTOBER 30,1924 AS MAP #2675.

PARCEL III:

ALL THAT CERTAIN PLOT,PIECE OR PARCEL OF LAND,SITUATE,LYING AND BEING IN THE CITY OF YONKERS,COUNTY OF WESTCHESTER AND STATE OF NEW YORK,BEING KNOWN AND DESIGNATED AS THE NORTHERLY ONE-HALF OF LOT NO.19 IN BLOCK 5 ON A CERTAIN MAP ENTITLED,"PLAN OF "PLAN OF HOMEFIELD,SECTION 6.ESTATE OF WILLIAM B.RICE,YONKERS,NEW YORK,DEVELOPED BY THE HOMELAND COMPANY"MAD BY WALTER W.WEBER,C.E.AND S.JULY 1,1924 AND FILED IN THE REGISTER'S OFFICE OF WESTCHESTER COUNTY (NOW WESTCHESTER COUNTY CLERK'S OFFICE,DIVISION OF LAND RECORDS) ON OCTOBER 30,1924 AS MAP #2675.

THE AFORESAID PREMISES BEING KNOWN AND DESIGNATED ON THE OFFICIAL TAX MAP OF THE CITY OF YONKERS AS SECTION 3 BLOCK 3196 LOT 7.

Schedule A  Page 3 of 3

# EXHIBIT

## B

At an IAS Part NC of the Supreme Court of the
State of New York held in and for the County of
Westchester at the Courthouse thereof located at
111 Dr. Martin Luther King Jr. Blvd., White
Plains, NY 10601 on the 23rd of July, 2009.

PRESENT:
HON.    Hon. Nicholas Colabella
                    Justice

---------------------------------------------------------------X

FREMONT INVESTMENT & LOAN,

                                        Plaintiff,

-against-

KIM TRAUB; ALEX AGUILARA,

                                        Defendants.

---------------------------------------------------------------X

Index No. 6318/07
**JUDGMENT OF
FORECLOSURE AND SALE**

Motion Decision
Motion Date: 7/10/09

Upon the Notice of Motion, dated June 17, 2009, the Summons and Verified Complaint filed

April 12, 2007 and Notice of Pendency of Action filed April 12, 2007; the mortgage recorded in the

Office of the Clerk or Register of the County of Westchester on February 27, 2006 in Control Number

463190228; and on all of the papers and proceedings heretofore filed or had herein, and on reading and

filing the affirmation of regularity of Maria T. Olivari, Esq., dated August 9, 2007 and showing that each

and all of the defendants herein have been personally served within this State with the summons in this

action, or have voluntarily appeared herein by their respective attorneys as appears from the affidavits of

service and notices of appearance now on file in the office of the Clerk of this Court; and

Upon the Affirmations of Gerry Careccia Leonti, Esq., dated June 25, 2009 and the annexed

Exhibits; and

Upon proving that more than the statutory required days have elapsed since said defendants were

so served as aforesaid; and

That none of the other defendants have appeared, served any answer to the complaint, nor had

their time to do so been extended; and

That none of the defendants is an infant, incompetent, absentee or in military service; and

That the complaint herein and due notice of the pendency of this action, containing all the

1

particulars required to be stated therein, were duly filed in the office of the Clerk of the County of Westchester on April 12, 2007 and April 12, 2007 respectively; and

An Order of Reference dated October 3, 2007 having been duly made to compute the amount due to the plaintiff upon the bond or note and mortgage set forth in the complaint and to examine and report whether the mortgaged premises can be sold in one parcel; and

Upon reading and filing the report of Theodore Brundage, Esq., the referee appointed herein, dated May 12, 2009 from which it appears that the sum of $492,232.03 was due thereon as of March 20, 2009; and that the mortgaged premises should be sold in one parcel; and

This motion having regularly come on to be heard before me on July 22, 2009 and no one appearing in opposition to the motion and due deliberation having been had thereon;

NOW, on motion of **DRUCKMAN LAW GROUP, PLLC** Successor in Interest of **DRUCKMAN & SINEL, LLP**, attorneys for plaintiff, it is

**ORDERED**, that the motion is granted; and it is further

**ORDERED**, that the name of Plaintiff be amended to HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF MAY 1, 2005, FREMONT HOME LOAN TRUST 2005-B; and it is further

**ORDERED**, that the plaintiff's mortgage being foreclosed upon herein, which was recorded in Control No.463190228, be and is hereby deemed amended to the extent that the description of the property which the mortgage covers is declared to be that set forth in Schedule ``A'' annexed to this order, and it is further

**ORDERED, ADJUDGED AND DECREED** that the said report of the said Referee dated May 12, 2009 be, and the same is hereby in all respects ratified and confirmed; and it is further

**ORDERED, ADJUDGED AND DECREED** that by accepting this appointment, the Referee certifies that he/she is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR, Part 36), including, but no limited to, Sections 36.2(c) ("Disqualifications from appointment"), and 36.2(d) ("Limitations on appointments based upon compensation"); and it is further

2

**ORDERED, ADJUDGED AND DECREED,** that Theodore Brundage, Esq., as the Referee appointed herein shall be paid $500.00 pursuant to CPLR § 8003(b); and it is further

**ORDERED, ADJUDGED AND DECREED** that the plaintiff is hereby awarded judgment herein for the sum of $492,232.03 together with interest at the rate set forth in the note and mortgage from the date specified in the referee's report, together with legal interest from the date of entry hereof, together with advances from the date specified in said report, plus the sum of $_____ as taxed by the Clerk of the Court and hereby adjudged to the plaintiff for costs and disbursements of this action, with interest thereon from the date of entry hereof, together with and additional allowance of $~~300.00~~ 0 hereby awarded to plaintiff in addition to costs and disbursements, with interest thereon from the date of entry hereof; and it is further

**ORDERED, ADJUDGED AND DECREED** that plaintiff is hereby awarded attorney's fees in the amount of $___2075___; and it is further

**ORDERED, ADJUDGED AND DECREED** that the mortgaged premises described in the complaint in this action and as hereinafter described, or such part thereof as may be sufficient to discharge the mortgage debt, the expense of the sale and the costs of this action as provided by the Real Property Actions and Proceedings Law be sold in one parcel at public auction at the lobby Westchester City Courthouse, 111 Dr. Martin Luther King Jr. Blvd. White Plains in the County of Westchester, State of New York by and under the direction of Theodore Brundage, Esq., who is hereby appointed Referee for that purpose; that the said Referee gives public notice of the time and place of such sale according to law and the practice of this Court in The Journal News _____ ;

That the plaintiff or any other parties to this action may become the purchaser or purchasers at such sale; that in case the plaintiff shall become the purchaser at the said sale plaintiff shall not be required to make any deposit thereon; that said referee executes to the purchaser or purchasers on such sale a deed of the premises sold and that the purchaser shall be required to pay the real estate transfer tax; that in the event the premises are located in a city having a population of 300,000 or more any liens or

3

encumbrances placed by a city agency which have priority over the foreclosed mortgage shall be paid out

of the proceeds of the sale in accordance with their priority according to law with such interest or

penalties which may have lawfully accrued thereon to the date of payment; and it is further

**ORDERED, ADJUDGED AND DECREED**, that said Referee then deposits the balance of said

proceeds of sale in his own name as Referee in *his IOLA account or other separate account*

and shall thereafter make the following payments and his/her checks drawn for that purpose shall be paid

by the said depository:

1.   The statutory fees of said Referee in the sum of $500.

2.   The expenses of the sale and the advertising expenses as shown on the bills presented, and certified by said Referee to be correct, duplicate copies of which shall be left with said depository.

3.   The amounts hereinabove adjudged due to the plaintiff, $492,232.03, plus costs and disbursements as taxed by the Clerk of the Court and additional allowance together with the interest thereon or so much thereof as the purchase money of the mortgaged premises will pay of the same together with any advances as provided for in the note and mortgage which plaintiff has paid for taxes, insurance, principal and interest and any other charges due to prior mortgages, or to maintain the premises pending consummation of this foreclosure sale, not previously included in the computation and upon presentation of receipts for said expenditures to the referee, all together with interest thereon pursuant to the note and mortgage. The prepaid real estate taxes, shall be apportioned at closing, reimbursed to plaintiff and paid by any third party purchaser.

4.   $ ___2075___ the attorneys' fees hereinabove awarded to plaintiff.

5.   If such Referee intends to apply for a further allowance for his fees, he may leave upon deposit such amount as will cover such additional allowance to await the further order of the Court thereon after application duly made.

That in case the plaintiff be the purchaser of said mortgaged premises at said sale, or in the event

4

that the rights of the purchaser at said sale and the terms of sale under this judgment shall be assigned to and be acquired by the plaintiff, and a valid assignment thereof filed with said referee, said referee shall not require the plaintiff to pay in cash the entire amount bid at said sale, but shall execute and deliver to the plaintiff a deed or deeds of the premises sold upon the payment to said referee of the amounts specified above in items marked "1" and "2" and the amounts of the aforesaid taxes, assessments, water charges or sewer rents, and interest or penalties thereon, or in lieu of the payment of said last mentioned amounts, upon filing with said referee receipts of the proper municipal authorities showing the payment thereof; that the balance of the amount bid, after deducting therefrom the aforesaid amounts paid by the plaintiff, for referee's fees, advertising expenses, and taxes, assessments, water charges or sewer rents, shall be allowed to the plaintiff and applied by said referee upon the amounts due to the plaintiff as specified above in item marked "3" and that if after so applying the balance of the amount bid, there shall be a surplus over and above the said amounts due to the plaintiff the plaintiff shall pay to said referee, upon delivery to plaintiff of said referee's deed, the amount of such surplus; that said referee on receiving said several amounts from plaintiff shall forthwith pay therefrom said taxes, assessments, water charges and sewer rents with interest and penalties thereon, unless the same have already been paid, and shall then deposit the balance.

That said referee takes the receipt of the plaintiff or plaintiff's attorney for the amounts paid as hereinbefore directed in item marked "2" and file it with his report of sale; that he deposits the surplus moneys, if any, with the Westchester County ~~Treasurer~~ Commissioner of Finance within five days after the same shall be received and be ascertainable to the credit of this action, to be withdrawn only on the order of the Court, signed by a Justice of the Court; that the said referee makes his report of such sale under oath showing the disposition of the proceeds of the sale and accompanied by the vouchers of the persons to whom payments were made and file it with the Clerk of the County of Westchester within thirty days after completing the sale and executing the proper conveyance to the purchaser; and that if the proceeds of such sale be insufficient to pay the amount reported due to the plaintiff with interest and costs as

5

aforesaid, the Plaintiff recovers of the defendant **KIM TRAUB** the whole deficiency or so much thereof as the Court may determine to be just and equitable of the residue of the mortgage debt remaining unsatisfied after a sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made as prescribed by Section 1371 of the Real Property Actions and Proceedings Law within the time limited therein, and the amount thereof is determined and awarded by an order of this Court as provided for in said section; and it is further

**ORDERED, ADJUDGED AND DECREED**, that said premises is to be sold in one parcel in "as is" physical order and condition, subject to any state of facts that an inspection of the premises would disclose, any state of facts that an accurate survey of the premises would show, any covenants, restrictions, declaration, reservations, easement, right of way, and public utility agreements of record, any building and zoning ordinances of the municipality in which the mortgaged premises is located and possible violations of same, any rights of tenants or persons in possession of the subject premises, prior liens of record, if any, except those liens addressed in Section 1354 of the Real Property Actions and Proceedings law; and it is further

**ORDERED** that the purchaser or purchasers at said sale be let into possession on production of the referee's deed or deeds;

**AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED**, that each and all of the defendants in this action and all persons claiming under them, or any or either of them, after the filing of such notice of pendency of this action, be and they are hereby forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said mortgaged premises and each and every part thereof.

THE FOLLOWING is a description of the said mortgaged premises hereinbefore mentioned: known as 111 HOOVER ROAD, YONKERS, NEW YORK 10710.   SEE SCHEDULE "A" ANNEXED.

SUBJECT TO any state of facts an accurate survey may show; covenants, easements, agreements, and restrictions of record and to any violations thereof; to the physical condition of any building or structure on the premises as of the date of sale hereunder; to zoning ordinances, restrictions and regulations; to regulations of and to orders and violations filed in any governmental departments or agencies; to possible rights of holders of security agreements and financing statements, if any, of record;

6

to all filed and unfiled liens and claims of any governmental agency having jurisdiction over the premises; to the right of redemption of the United States of America for 120 days from the date of sale.

**If the sale is cancelled or postponed, the plaintiff shall compensate the Referee $250 for each delay unless the Referee has requested the delay. Such amount may be recouped by plaintiff.**

E N T E R

_____ J.S.C.

HON. NICHOLAS COLABELLA
SUPREME COURT JUSTICE

7

*First American*
*Title Insurance Company*
NATIONAL DEFAULT TITLE SERVICES

## SCHEDULE A

## DESCRIPTION OF MORTGAGED PREMISES

Title No.

## PARCEL I

*ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND*, situate, lying and being in the City of Yonkers, County of Westchester and State of New York, being known and designated as Lot #20 in Block 5, on a certain map entitled, "Plan of Homefield, Section 6, Estate of William B. Rice, Yonkers, New York, developed by the Homeland Company" made by Walter W. Weber, C.E. and S., July 1, 1924 and filed in the Register's Office of Westchester County (now Westchester County Clerk's Office, Division of Land Records) on October 30, 1924 as Map #2675, said lot being more particularly bounded and described according to said map, as follows:

*BEGINNING* at a point on the westerly side of Hoover Road (formerly Quincy Road) distant northerly 300 feet from the corner formed by the intersection of the westerly side of Hoover Road with the northerly side of Odell Road, which point of beginning is also the northeast corner of Lot No. 19;

*RUNNING THENCE* westerly along the northerly side of Lot No. 19, 100 feet;

*THENCE* northerly parallel with the westerly side of Hoover Road, 40 feet;

*THENCE* easterly parallel with the first described line, 100 feet to the westerly side of Hoover Road; and

*THENCE* southerly along the same, 40 feet to the point or place of *BEGINNING.*

The aforesaid premises being known and designated on the official Tax Map of the City of Yonkers, as Section 3 Block 3196 Lot 6.

Index No. 6318/07

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

FREMONT INVESTMENT & LOAN,

                                    Plaintiff,

        -against-

KIM TRAUB, et al.

                                    Defendants.

## JUDGMENT OF FORECLOSURE AND SALE

Certified pursuant to 22NYCRR 130-1.1a

_____
Gerry Careccia Leonti, Esq.

**DRUCKMAN LAW GROUP, PLLC**
Successor in Interest of
**DRUCKMAN & SINEL, LLP**
Attorneys for Plaintiff
242 Drexel Avenue, Suite 2
Westbury, New York 11590
Tel (516) 876-0800
Fax (516) 876-0888
**File # 17205**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------X
FREMONT INVESTMENT & LOAN,

                                    Plaintiff,                              Index No. 6318/07

                    -against-                                          **BILL OF COSTS**

KIM TRAUB, et al.
                                                Defendants,
-----------------------------------------------------------------X

| | | | |
|---|---|---|---|
| Costs before note of issue | $200.00 | Index Number & Notice of Pendency $258.00 | |
| *CPLR 8201(1)* | | *CPLR 8018(a)(b)* | |
| Allowance by statute | $150.00 | Referee's Fee $200.00 | |
| *CPLR 8302(b)* | | *CPLR 8301(a), 8003(a)* | |
| Additional Allowance | $ 50.00 | Title Search $500.00 | |
| *CPLR 8302(d)* | | *CPLR 8301(10)* | |
| | | Service of Process $50.00 | |
| | | RJI $95.00 | |
| | | Filing Fees $90.00 | |
| | | Recording Costs $80.60 | |

**FILED**

AUG – 5 2009

TIMOTHY C. IDONI
COUNTY CLERK
\TY OF WESTCHESTER

| | | | | |
|---|---|---|---|---|
| **COSTS** | $400.00 | + | $1,273.60 | **DISBURSEMENTS** |
| **TOTAL** | | | $1,673.60 | |

Signed this _____ day of _____ , 2009

_____
Clerk

STATE OF NEW YORK)
                                    )ss:
COUNTY OF NASSAU )

        Gerry Careccia Leonti, Esq., an attorney admitted to practice in the State of New York, does hereby affirm
to be true, under the penalties of perjury as follows:
        The foregoing disbursements have been or will necessarily be made or incurred in this action and are
reasonable in amount and that copies of the documents or papers as charged herein were actually and necessarily
obtained for use in this action.

Dated:   Westbury, New York
            June 25, 2009

_____
Gerry Careccia Leonti, Esq.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------------X
FREMONT INVESTMENT & LOAN,

                        Plaintiff,              Index No. 6318/07

                                               **AFFIRMATION**

     -against-

KIM TRAUB, et al.

                        Defendants,
-----------------------------------------------------------------------X

      Gerry Careccia Leonti, Esq., an attorney admitted to practice in the State of New York, does hereby affirm to be true, under the penalties of perjury as follows:

1.     I am an associate of the law firm of **DRUCKMAN LAW GROUP, PLLC** Successor in Interest of **DRUCKMAN & SINEL, LLP**, attorneys for the plaintiff, and as such I am fully familiar with the facts herein stated.

2.     Since August 9, 2007, the date of the affirmation of Maria T. Olivari, Esq., with respect to the regularity of the proceedings, there has been no change in the status of the case and there have been no additional proceedings herein other than the order of this Court dated October 3, 2007 appointing a referee to compute, the hearing before the Referee appointed herein to compute and the Referee's Report dated May 12, 2009 and filed herein.

3.     Upon information and belief based on the documentary evidence submitted herein, at the time this action was commenced, FREMONT INVESTMENT & LOAN was the holder and owner of the subject Note and Mortgage. Thereafter, after commencement of this action, the subject Note and Mortgage were assigned to HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF MAY 1, 2005, FREMONT HOME LOAN TRUST 2005-B, for good and valuable consideration by an Assignment of Mortgage, dated October 28, 2008, and duly recorded in the Office of the Clerk/Register of Westchester County on January 12, 2009 in Control Number 490070360. Accordingly, request is herewith made that HSBC BANK USA, NATIONAL

ASSOCIATION, AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF MAY 1, 2005, FREMONT HOME LOAN TRUST 2005-B be substituted in the caption of this action as Plaintiff.

a. Upon information and belief, based on information provided by Plaintiff, this action was brought to foreclose a residential mortgage loan which is a high cost home loan as defined by Banking Law §6-1, or a subprime home loan or a non-traditional loan as defined by RPAPL §1304.

4. None of the defendants have served an answer to the complaint, nor have they made any motion with respect thereto and none of the defendants have appeared.

5. The time for all other defendants to appear, answer or move with respect to the complaint has fully expired and their time to do so has not been extended by stipulation, order of this Court, or otherwise and the defendants are now in default in appearing except as hereinabove set forth.

6. Pursuant to CPLR section 3215(g)3(i), an additional notice has been mailed to the defendants KIM TRAUB and ALEX AGUILARA,. The affidavit of additional mailing is annexed hereto.

7. By mutual mistake of plaintiff and defendants, the description of the premises mortgaged to plaintiff had a typographical error in the description of Parcel I, the second course wherein it reads "Running thence westerly along the northerly side of Lot No. 18, 100 feet;" instead of "Running thence westerly along the northerly side of Lot No. 19, 100 feet;" and in that the Schedule "A" attached to the mortgage included only the first of two pages in the schedule "A" property description. Plaintiff respectfully requests that the court amend the mortgage, *nunc pro tunc*, to correct the typographical error and to include the complete two page "schedule "A" attached hereto."

8.      This application is brought on by notice of motion to the defaulting defendants to afford the notice required by CPLR 3215 where the default is more than one year. No other defendant is entitled to notice of this application.

9.      Upon information and belief, none of the defendants is an infant, incompetent, absentee or in military service.

10.     All of the proceedings have been regular and in accordance with the rules and practices of this court.

11.     Plaintiff respectfully requests that Plaintiff's attorneys be awarded of attorney's fees as the Court may determine to be just and equitable and an additional allowance of $300.00. Plaintiff respectfully invites the Court's attention to its counsel Affirmation of Reasonable Attorney Fees and Discretionary Allowance detailing the reasons why the requested relief is appropriate.

12.     No previous application has been made for the relief requested herein.

13.     This affirmation is made and submitted for the purpose of confirming the Referee's Report filed herein, establishing the regularity of this and all prior proceedings and for the purpose of obtaining final judgment in this foreclosure action.

**WHEREFORE,** affirmant on behalf of the plaintiff respectfully asks that the plaintiff have judgment of foreclosure and sale in the usual form, together with the costs, disbursements and extra allowance as provided by the Civil Practice Law and Rules and such other and further relief as may be just and proper.

Dated:  Westbury, New York
        June 25, 2009

_____
Gerry Careccia Leonti, Esq.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------------------X
FREMONT INVESTMENT & LOAN,

                             Plaintiff,                Index No. 6318/07

                       **AFFIRMATION OF**
                       **REASONABLE**
          -against-                **ATTORNEYS' FEES**
                       **AND DISCRETIONARY**
                       **ALLOWANCE**

KIM TRAUB, et al.
                        Defendants,
-------------------------------------------------------------------X

Gerry Careccia Leonti, Esq., an attorney admitted to practice in the State of New York, does hereby affirm to be true, under the penalties of perjury as follows:

1.     I am an associate of the law firm of **DRUCKMAN LAW GROUP, PLLC** Successor in Interest of **DRUCKMAN & SINEL, LLP**, attorneys for the plaintiff, and as such I am fully familiar with the facts herein stated.

2.     This affirmation is submitted in support of an application for attorneys' fees and additional allowance pursuant to CPLR § 8303.

3.     The mortgage provides for reasonable attorney's fees in the following paragraph:

> 22. * * * In any law suit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

4.     My law firm has expended or will expend the approximate following times and services in the foreclosure of the instant mortgage:

| SERVICE PERFORMED | ATTORNEY TIME | SUPPORT STAFF TIME |
|---|---|---|
| Receipt and review of documents, creation of file, ordering title search | :30 | :30 |
| Review title search and documents to determine proper parties, drafting | | |

FILED
AUG - 5 2009
TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

RECEIVED
AUG - 5 2009
TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

| | | |
|---|---|---|
| summons, complaint, lis pendens, transcription, collation, photocopying exhibits, review and forwarding to process server | 1:30 | 3:00 |
| Obtain index number, file notice of pendency | | :30 |
| Review notices of appearance, Drafting and review order of reference, collation, photocopying exhibits, forwarding to Court | 1:15 | 1:40 |
| Request amount due and advances from client | | :20 |
| Review amount due, drafting of report of referee and supporting papers, collating and forwarding to referee | :45 | 1:15 |
| Receipt and review of referee's report, review of judgment, bill of costs, affirmations in support, transcription, collation, transmitting to Court | 1:15 | 1:15 |
| **TOTAL HOURS** | 5:15 | 8:30 |

**ANTICIPATED SERVICES**

| | | |
|---|---|---|
| Notification of referee to sell, coordinating sale date, publishing requirements and referee's schedule | :30 | :45 |
| Preparation of notice of sale | | :30 |
| Scheduling advertising | | :30 |
| Drafting terms of sale, deed, referee's report of sale | 1:15 | :20 |
| **TOTAL TIME** | 7:00 | 10.35 |

5.     Your deponent has been duly admitted to practice law in the State of New York since 1985. We are members and participants in State and Local Bar Associations and Committees including the Real Property Law section of the New York State Bar Association. We have extensive experience in mortgage foreclosures and have represented, among others, the following institutions and banks in

mortgage foreclosures:  USLIFE Title Insurance Company of New York; Source One Mortgage Services Corporation; Mellon Mortgage Corporation; MidCoast Mortgage Corporation; G.E. Capital Asset Management Corp.; Norwest Mortgage, Inc.; Great Financial Mortgage Corporation and Wells Fargo Bank.  In addition to having extensive experience in mortgage foreclosures, we have participated in numerous real estate workouts.

6.      The awarding of attorney's fees is customary in real estate foreclosure where the documents so provide.  Community Savings Bank v. Shaad, 105 AD2d 1063 (4th Dept. 1984).  Where a mortgage provides for legal costs to the foreclosing party it is to be enforced.  The right of the mortgagee to reasonable attorney's fee is well recognized.

7.      In determining whether the request is reasonable, the factors generally considered are: Time spent by counsel, Gair v. Peck, 6 NY2d 97 (1959).  Complexity and character of the work including opposition encountered, Randall v. Packard, 142 NY 47 (1894).  Counsel's experience and training Rahmey v. Blum, 95 AD2d 294 466 (2nd Dept. 1983) , and always important, the results obtained.

8.      The expenses of foreclosure were a considered item by the mortgagor and mortgagee at the time the mortgage was granted.  The express agreement should be given substantial weight to discourage the debtor's natural inclination to obfuscate and delay.  Spurious litigation is diminished where the foreclosure costs are entirely borne by the borrower.

9.      My standard and customary charge for an uncontested mortgage foreclosure is $175.00 per hour for attorney time and $60.00 per hour for support staff.  The standard and customary charge for attorney services varies within the community from $150.00 to $200.00 per hour.

10.      I have by this affirmation detailed the time spent, major difficulties, questions of law, character of work and objections encountered, together with the results obtained.  The time expended was necessarily required and the rate charged was reasonable.

11.      The result accomplished was favorable and obtained with diligence and in the shortest time reasonably to be anticipated in view of the number and complexities of the issues.  Based on the foregoing your deponent believes that the fee requested, $2,075.00 is both fair and reasonable.  No other fees have been paid in this matter.

12.     Plaintiff respectfully requests an additional allowance of $300.00 pursuant to CPLR §
8303(a)(1).  Regardless of whether any costs have been awarded, the court in a foreclosure action may
award a sum not exceeding two and one-half percent of the sum due, not to exceed $300.00.  Although
not mandatory, such allowance is typically awarded as a matter of course in the judgment of foreclosure
and sale.

13.     This additional allowance is distinguishable from taxable costs since its purpose is to
indemnify a successful party for the expenses beyond those usually incurred, although not for the entire
expense.  It may be given to either party who is successful.  *See* Metropolitan Sav. Bank v. Tuttle, 183
Misc. 879, 52 N.Y.S.2d 472 (1944).  Additional allowance is based upon the sum due on the mortgage
and not on the value of the property.  *See* Fred Maier & Sons v. Burroughs, 177 N.Y.S. 524 (Sup. Ct.
1919).  Additional allowance is discretionary and does not require any finding that the case was difficult
or extraordinary.  *See* DiCianni v. Gelman, 224 A.D. 621, 232 N.Y.S. 79 (4th Dept. 1928).  Although the
court is concededly empowered to order otherwise, there is certainly no basis to change the rule in this
case.

14.     Based on the foregoing, it is respectfully prayed that Plaintiff's attorneys be awarded of
attorney's fees as determined by the Court plus an additional allowance of $300.00.

Dated:   Westbury, New York
         June 25, 2009

_____
Gerry Careccia Leonti, Esq.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------------X
FREMONT INVESTMENT & LOAN,

                              Plaintiff,                                    Index No. 6318/07

              -against-                                                    **BILL OF COSTS**

KIM TRAUB, et al.

                              Defendants,
------------------------------------------------------------------X

| | | | |
|---|---|---|---|
| Costs before note of issue | $200.00 | Index Number & Notice of Pendency | $258.00 |
| *CPLR 8201(1)* | | *CPLR 8018(a)(b)* | |
| Allowance by statute | $150.00 | Referee's Fee | $200.00 |
| *CPLR 8302(b)* | | *CPLR 8301(a), 8003(a)* | |
| Additional Allowance | $ 50.00 | Title Search | $500.00 |
| *CPLR 8302(d)* | | *CPLR 8301(10)* | |
| | | Service of Process | $50.00 |
| | | RJI | $95.00 |
| | | Filing Fees | $90.00 |
| | | Recording Costs | $80.60 |

**FILED**

AUG - 5 2009

TIMOTHY C. IDONI
COUNTY CLERK
¬TY OF WESTCHESTER

**COSTS**          $400.00      +      $1,273.60      **DISBURSEMENTS**
**TOTAL**                                     $1,673.60

Signed this _____ day of ____August____ , 2009

                                                                        _____
                                                                                        Clerk

STATE OF NEW YORK)
                                )ss:
COUNTY OF NASSAU )
        Gerry Careccia Leonti, Esq., an attorney admitted to practice in the State of New York, does hereby affirm
to be true, under the penalties of perjury as follows:
        The foregoing disbursements have been or will necessarily be made or incurred in this action and are
reasonable in amount and that copies of the documents or papers as charged herein were actually and necessarily
obtained for use in this action.

Dated:   Westbury, New York
              June 25, 2009

                                                        _____
                                                        Gerry Careccia Leonti, Esq.

## SCHEDULE B

| EXHIBITS | DESCRIPTION |
|---|---|
| EXHIBIT A | REFEREE'S OATH AND REPORT |
| EXHIBIT B | CPLR 3215(G)(3) AFFIDAVIT |
| EXHIBIT C | ORDER OF REFERENCE |
| EXHIBIT D | RJI |
| EXHIBIT E | AFFIDAVITS OF SERVICE |
| EXHIBIT F | LIS PENDENS |
| EXHIBIT G | SUMMONS & COMPLAINT |
| EXHIBIT H | NOTICE OF INTENT TO FORECLOSE |
| EXHIBIT I | NOTE |
| EXHIBIT J | MORTGAGE |
| EXHIBIT K | ASSIGNMENTS |



Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FREMONT INVESTMENT & LOAN,

       Plaintiff,

    - against -

KIM TRAUB, et al.,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**INDEX NO. 6318/07**

**REFEREE'S OATH**

STATE OF NEW YORK, COUNTY OF WESTCHESTER ss.:

I, Theodore Brundage, Esq., the Referee appointed by an Order of this Court, made and entered in the above entitled action and dated October 3, 2007, to ascertain and compute the amount due to the Plaintiff for principal and interest and otherwise upon the Bond or Note and Mortgage upon which this action was brought, and to examine and report whether the mortgaged premises can be sold in parcels, do solemnly swear that I will faithfully and fairly determine the questions so referred to me, and make a just and true report thereon according to the best of my understanding and as the said order requires.

Dated : 5/12/09

_____
Theodore Brundage, Esq., Referee

STATE OF   NEW YORK )
COUNTY OF  WESTCHESTER ) ss.:

    On the 12 day of MAY , in the year 2010 , before me, the undersigned, personally appeared THEODORE BRUNDAGE, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

CLARE A. PIRO
Notary Public, State of New York
No. 02PI4835288
Qualified in Westchester County
Commission Expires January 31, 20__

RECEIVED

AUG -5 2009

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FREMONT INVESTMENT & LOAN,

      Plaintiff,

        - against -

KIM TRAUB, et al.,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**INDEX NO. 6318/07**

**REPORT OF AMOUNT DUE**

TO THE SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

Pursuant to an Order of this Court, made and entered in the above entitled action and dated October 3, 2007, whereby it was referred to the undersigned as Referee to ascertain and compute the amount due to the Plaintiff for principal and interest and otherwise upon and by virtue of the Bond or Note and Mortgage upon which this action was brought, and also to examine and report whether in my opinion the mortgaged premises can be sold in parcels:

I, Theodore Brundage, Esq., the Referee named in the said Order, DO REPORT that before proceeding to take testimony I was first duly sworn faithfully and fairly to determine the questions referred to me, and to make a just and true report thereon, according to the best of my understanding.

I have computed and ascertained the amount due to the Plaintiff upon and by virtue of the said Bond or Note and Mortgage and I find, and accordingly report, that there is due to the Plaintiff for principal, interest and advances on the said Bond or Note and Mortgage, as of March 20, 2009, the sum of $492,232.03.

Schedule A, annexed hereto, contains a schedule of the documentary evidence introduced before me, and shows the amounts due for principal and interest, respectively, the period of the computation of the interest and its rate.

I have made inquiry as to the advisability of selling the mortgaged premises in parcels and find, accordingly, that the mortgaged premises should be sold in one parcel.

Dated:      5/12/09

_____
Theodore Brundage, Esq., Referee

## REFEREE'S COMPUTATION SCHEDULE

**PRINCIPAL BALANCE OF NOTE/BOND AND MORTGAGE** .......... $420,512.03

**INTEREST** at 7.45% per annum from
July 1, 2006 to March 20, 2009 ..................................................... 65,150.56

**PLAINTIFF'S ESCROW ADVANCES:**
Taxes ....................................................................... 0.00
Water/Sewer ........................................................... 0.00
Hazard Insurance ............................................ 5,249.97
PMI/MIP Insurance ............................................ 0.00

**CORPORATE ADVANCES:**
Property Maintenance ..................................... 21.00
Inspections/Winterizing ................................. 79.55
BPO/Appraisal .............................................. 525.00
Non-Sufficient Funds .................................... 0.00

**LATE CHARGES ( Pre acceleration)** ....... 693.92

**ESCROW/CORPORATE ADVANCE & LATE CHARGES SUBTOTAL:**        6.569.44

                                                        **SUBTOTAL:** .................. $492,232.03

**CREDIT ESCROW BALANCE:** ................................................. -    0.00
**LESS SUSPENSE/UNAPPLIED FUNDS:** ................................. -    0.00

**TOTAL DUE PLAINTIFF** as of March 20, 2009 ....................... **$492,232.03**

Dated:   5/12/09

_____
Theodore Brundage, Esq., Referee

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FREMONT INVESTMENT & LOAN,

        Plaintiff,

    -against-

KIM TRAUB, et al.

        Defendants,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

AFFIDAVIT OF AMOUNT DUE

INDEX NO. 6318/07

STATE OF Texas )

COUNTY OF Harris ) ss.:

       Diane Dixon being duly sworn, deposes and says:

I am the Assistant Vice President, of Litton Loan Servicing, LP Attorney in Fact of HSBC Bank USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of May 1, 2005, Fremont Home Loan Trust 2005-B, the assignee of the plaintiff in the within action and am in charge of all delinquent mortgage accounts, and affirm that the figures contained in the following statement have been taken from records in my office.

I am familiar with the facts and circumstances concerning the mortgage under foreclosure herein. The said mortgage covers one parcel of real property.

The mortgagors have failed to comply with the terms and conditions of the said bond and mortgage by failing and omitting to pay $2,720.56, which sum represents the installment of principal and interest and the installment of taxes and other escrow amounts which became due on August 1, 2006, all as provided for in the said bond and mortgage, and also by failing and omitting to pay all installments which became due on the first day of each and every month thereafter. The mortgagors are in default, and the plaintiff declared the balance of the mortgage to be due and payable.

Said premises consist of a one to four family dwelling and in my opinion the real property cannot be sold in more than one parcel.

At the time of the default referred to above, the principal balance of the loan was $420,512.03.

The total amount due plaintiff at this time is as follows:

## STATEMENT

**PRINCIPAL BALANCE OF NOTE/BOND AND MORTGAGE**          $420,512.03

**INTEREST** at 7.45% per annum from
July 1, 2006 to March 20, 2009                                              65,150.56

**PLAINTIFF'S ESCROW ADVANCES:**

| | | |
|---|---|---|
| Taxes | $ | 0.00 |
| Water/Sewer | | 0.00 |
| Hazard Insurance | | 5,249.97 |
| PMI/MIP Insurance | | 0.00 |

**CORPORATE ADVANCES:**

| | |
|---|---|
| Property Maintenance | 21.00 |
| Inspections/Winterizing | 79.55 |
| BPO/Appraisal | 525.00 |
| Non-Sufficient Funds | 0.00 |

**LATE CHARGES ( pre acceleration)** 693.92

**ESCROW ADVANCE & CORPORATE ADVANCES SUBTOTAL:**          6,569.44

| | | |
|---|---|---|
| **SUBTOTAL:** | | $492,232.03 |
| **CREDIT ESCROW BALANCE:** | - | 0.00 |
| **LESS SUSPENSE/UNAPPLIED FUNDS:** | - | 0.00 |

**TOTAL DUE PLAINTIFF** as of March 20, 2009

**$492,232.03**

Litton Loan Servicing, LP Attorney in Fact of HSBC Bank USA, National Association, as Trustee under the Pooling and Servicing Agreement dated as of May 1, 2005, Fremont Home Loan Trust 2005-B

BY: _____
Diane Dixon
Assistant Vice President

On the _____ day of _____APR 0 6 2009_____ in the year 2009 before me the undersigned personally appeared_____Diane Dixon_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies) and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted executed the instrument and that such individual(s) made such appearance before the undersigned in the

__Houston__          in          __Texas__
Insert City or political subdivision          insert the State or Country or other place acknowledgement was taken

_____
Signature and office of individual taking acknowledgment

BRENDA MCKINZY
Notary Public, State of Texas
My Commission Expires
December 05, 2010

Recorded in Official Records, Solano County

**Marc C. Tonnesen**
Assessor/Recorder

P  TCS

Doc#:  200800089777

11/07/2008
10:47 AM
AR79
88

| Titles: 1 | Pages:  5 |
|---|---|
| Fees | 20.00 |
| Taxes | 0.00 |
| Other | 0.00 |
| PAID | $20.00 |

**RECORDING REQUESTED BY
& AFTER RECORDING RETURN TO:**
Litton Loan Servicing LP
4828 Loop Central Drive
Houston, Texas 77081
Attention: Alison S. Walas
Prepared By: Klump

## LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that HSBC Bank USA, National Association ("HSBC"), hereby constitutes and appoints the Litton Loan Servicing LP ("Litton"), by and through Litton's officers, HSBC's true and lawful Attorney-in-Fact, in HSBC's name, place and stead and for HSBC's benefit, in connection with all mortgage loans serviced by the Servicer pursuant to the Asset Purchase Agreement and Pooling and Servicing Agreements listed on the Addendum attached hereto for the purpose of performing all acts and executing all documents in the name of HSBC as may be customarily and reasonably necessary and appropriate to effectuate the following enumerated transactions in respect of any of the mortgages or deeds of trust (the "Mortgages" and the "Deeds of Trust", respectively) and promissory notes secured thereby (the "Mortgage Notes") (whether the undersigned is named therein as mortgagee or beneficiary or has become mortgagee by virtue of endorsement of the Mortgage Note secured by any such Mortgage or Deed of Trust) and for which the Servicer is acting as servicer, all subject to the terms of the Pooling and Servicing Agreement.

This appointment shall apply to the following enumerated transactions only:

1.    The conveyance of the properties to the mortgage insurer, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title to real estate owned.

2.    The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the repurchase of the mortgage loan secured and evidenced thereby.

The undersigned gives said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the undersigned might or could do, and hereby does ratify and confirm to all that said Attorney-in-Fact shall lawfully do or cause to be done by authority hereof.

Fremont – HSBC POA w/Addendum

276-2013

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of attorney; and may be satisfied that this Limited Power of Attorney shall continue in full force and effect and has not been revoked unless an instrument of revocation has been made in writing by the undersigned.

IN WITNESS WHEREOF, HSBC has caused its corporate seal to be hereto affixed and these presents to be signed and acknowledged in its name and behalf by _Susie Moy__ its duly elected and authorized _Vice President_ this _10th_ day of October_, 2008.

HSBC Bank USA, National Association

By: _____
Name:   Susie Moy
Title:   Vice President

Witness: _____
Name:   Doris Wong
Title:   Officer

Witness: _____
Name:   Nancy Luong
Title:   Corporate Trust Specialist

STATE OF ___ New York ___

COUNT OF ___ New York ___

On _October 10, 2008, before me, the undersigned, a Notary Public in and for said state, personally appeared _Susie Moy__, _Vice President__ for HSBC Bank USA, National Association, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed that same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted and executed the instrument.

WITESS my hand and official seal.
    (SEAL)

_____
                                          Notary Public
My Commission Expires _____



MARK INIGO
No. 01IN6192025
Notary Public, State of New York
Qualified in New York County
My Commission Expires 08/25/2012

Fremont – HSBC POA w/Addendum

## Addendum

| Inv Code | Deal |
|---|---|
| #296-6 | Home Equity Loan Trust 2006-FM1, Asset Backed Pass-Through Certificates<br>-Pooling and Servicing Agreement dated as of August 25, 2006 by and between ACE Securities Corp., as Depositor, Fremont Investment & Loan, as Servicer, Fremont Investment & Loan, as Originator and Wells Fargo Bank, N.A., as Master Servicer and Securities Administrator, Wells Fargo Bank, N.A., as Custodian and HSBC Bank USA, National Association, as Trustee (Litton Loan Servicing LP is successor servicer to Fremont Investment & Loan per the Asset Purchase Agreement dated May 7, 2008 between Fremont Investment & Loan and Litton Loan Servicing LP) |
| #296-7 | Fremont Home Loan Trust 2003-A, Asset-Backed Certificates, Series 2003-A<br>-Pooling and Servicing Agreement dated as of August 1, 2003 by and between Financial Asset Securities Corp., as Depositor, Fremont Investment & Loan, as Servicer, Wells Fargo Bank Minnesota, National Association, as Master Servicer and Trust Administrator and HSBC Bank USA, National Association, as Trustee (Litton Loan Servicing LP is successor servicer to Fremont Investment & Loan per the Asset Purchase Agreement dated May 7, 2008 between Fremont Investment & Loan and Litton Loan Servicing LP) |
| #296-8 | Fremont Home Loan Trust 2003-B, Asset Backed Certificates, Series 2003-B<br>-Pooling and Servicing Agreement dated as of November 1, 2003 by and between Asset Backed Securities Corporation, as Depositor, Fremont Investment & Loan, as Originator and Servicer, Wells Fargo Bank Minnesota, National Association, as Master Servicer and Trust Administrator and HSBC Bank USA, National Association, as Trustee (Litton Loan Servicing LP is successor servicer to Fremont Investment & Loan per the Asset Purchase Agreement dated May 7, 2008 between Fremont Investment & Loan and Litton Loan Servicing LP) |
| #296-9 | Fremont Home Loan Trust 2004-A, Asset Backed Certificates, Series 2004-A<br>-Pooling and Servicing Agreement dated as of February 1, 2004 by and GS Mortgage Securities Corp., as Depositor, Fremont Investment & Loan, as Originator and Servicer, Wells Fargo Bank Minnesota, National Association, as Master Servicer and Trust Administrator and HSBC Bank USA, National Association, as Trustee (Litton Loan Servicing LP is successor servicer to Fremont Investment & Loan per the Asset Purchase Agreement dated May 7, 2008 between Fremont Investment & Loan and Litton Loan Servicing LP) |
| #296-10 | Fremont Home Loan Trust 2004-B, Asset-Backed Certificates, Series 2004-B<br>-Pooling and Servicing Agreement dated as of May 1, 2004 by and between Financial Asset Securities Corp., as Depositor, Fremont Investment & Loan, as Servicer, Wells Fargo Bank, N.A., as Master Servicer and Trust Administrator and HSBC Bank USA, National Association, as Trustee (Litton Loan Servicing LP is successor servicer to Fremont Investment & Loan per the Asset Purchase Agreement dated May 7, 2008 between Fremont Investment & Loan and Litton Loan Servicing LP) |
| #296-11 | Fremont Home Loan Trust 2004-C, Asset Backed Certificates, Series 2004-C<br>-Pooling and Servicing Agreement dated as of August 1, 2004 by and Fremont Mortgage Securities Corporation, as Depositor, Fremont Investment & Loan, as Originator and Servicer, Wells Fargo Bank, N.A., as Master Servicer and Trust Administrator and HSBC Bank USA, National Association, as Trustee (Litton Loan Servicing LP is successor servicer to Fremont Investment & Loan per the Asset Purchase Agreement dated May 7, 2008 between Fremont Investment & Loan and Litton Loan Servicing LP) |
| #296-12 | Fremont Home Loan Trust 2004-D, Asset Backed Certificates, Series 2004-D<br>-Pooling and Servicing Agreement dated as of November 1, 2004 by and Fremont Mortgage Securities Corporation, as Depositor, Fremont Investment & Loan, as Originator and Servicer, Wells Fargo Bank, N.A., as Master Servicer and Trust Administrator and HSBC Bank USA, National Association, as Trustee (Litton Loan Servicing LP is successor servicer to Fremont Investment & Loan per the Asset Purchase Agreement dated May 7, 2008 between Fremont Investment & Loan and Litton Loan Servicing LP) |

| | |
|---|---|
| #296-13 | Fremont Home Loan Trust 2005-A, Asset Backed Certificates, Series 2005-A<br>-Pooling and Servicing Agreement dated as of February 1, 2005 by and Fremont Mortgage Securities Corporation, as Depositor, Fremont Investment & Loan, as Originator and Servicer, Wells Fargo Bank, N.A., as Master Servicer and Trust Administrator and HSBC Bank USA, National Association, as Trustee (Litton Loan Servicing LP is successor servicer to Fremont Investment & Loan per the Asset Purchase Agreement dated May 7, 2008 between Fremont Investment & Loan and Litton Loan Servicing LP) |
| #296-14 | Fremont Home Loan Trust 2005-B, Asset Backed Certificates, Series 2005-B<br>-Pooling and Servicing Agreement dated as of May 1, 2005 by and Fremont Mortgage Securities Corporation, as Depositor, Fremont Investment & Loan, as Originator and Servicer, Wells Fargo Bank, N.A., as Master Servicer and Trust Administrator and HSBC Bank USA, National Association, as Trustee (Litton Loan Servicing LP is successor servicer to Fremont Investment & Loan per the Asset Purchase Agreement dated May 7, 2008 between Fremont Investment & Loan and Litton Loan Servicing LP) |
| #296-15 | Fremont Home Loan Trust 2005-C, Asset Backed Certificates, Series 2005-C<br>-Pooling and Servicing Agreement dated as of July 1, 2005 by and Fremont Mortgage Securities Corporation, as Depositor, Fremont Investment & Loan, as Originator and Servicer, Wells Fargo Bank, N.A., as Master Servicer and Trust Administrator and HSBC Bank USA, National Association, as Trustee (Litton Loan Servicing LP is successor servicer to Fremont Investment & Loan per the Asset Purchase Agreement dated May 7, 2008 between Fremont Investment & Loan and Litton Loan Servicing LP) |
| #296-16 | Fremont Home Loan Trust 2005-D, Asset Backed Certificates, Series 2005-D<br>-Pooling and Servicing Agreement dated as of November 1, 2005 by and Fremont Mortgage Securities Corporation, as Depositor, Fremont Investment & Loan, as Originator and Servicer, Wells Fargo Bank, N.A., as Master Servicer and Trust Administrator and Swap Administrator and HSBC Bank USA, National Association, as Trustee (Litton Loan Servicing LP is successor servicer to Fremont Investment & Loan per the Asset Purchase Agreement dated May 7, 2008 between Fremont Investment & Loan and Litton Loan Servicing LP) |
| #296-17 | Fremont Home Loan Trust 2005-E, Asset Backed Certificates, Series 2005-E<br>-Pooling and Servicing Agreement dated as of December 1, 2005 by and Fremont Mortgage Securities Corporation, as Depositor, Fremont Investment & Loan, as Originator and Servicer, Wells Fargo Bank, N.A., as Master Servicer and Trust Administrator and HSBC Bank USA, National Association, as Trustee (Litton Loan Servicing LP is successor servicer to Fremont Investment & Loan per the Asset Purchase Agreement dated May 7, 2008 between Fremont Investment & Loan and Litton Loan Servicing LP) |
| #296-18 | Fremont Home Loan Trust 2006-A, Mortgage-Backed Certificates, Series 2006-A<br>-Pooling and Servicing Agreement dated as of May 1, 2006 by and between Financial Asset Securities Corp., as Depositor, Fremont Investment & Loan, as Sponsor, Originator and Servicer, Wells Fargo Bank, N.A., as Master Servicer, Trust Administrator and Swap Administrator and HSBC Bank USA, National Association, as Trustee (Litton Loan Servicing LP is successor servicer to Fremont Investment & Loan per the Asset Purchase Agreement dated May 7, 2008 between Fremont Investment & Loan and Litton Loan Servicing LP) |
| #296-19 | Fremont Home Loan Trust 2006-B, Asset Backed Certificates, Series 2006-B<br>-Pooling and Servicing Agreement dated as of August 1, 2006 by and Fremont Mortgage Securities Corporation, as Depositor, Fremont Investment & Loan, as Originator and Servicer, Wells Fargo Bank, N.A., as Master Servicer and Trust Administrator and HSBC Bank USA, National Association, as Trustee (Litton Loan Servicing LP is successor servicer to Fremont Investment & Loan per the Asset Purchase Agreement dated May 7, 2008 between Fremont Investment & Loan and Litton Loan Servicing LP) |
| #296-20 | Fremont Home Loan Trust 2006-C, Asset Backed Certificates, Series 2006-C<br>-Pooling and Servicing Agreement dated as of September 1, 2006 by and Fremont Mortgage Securities Corporation, as Depositor, Fremont Investment & Loan, as Sponsor, Originator and Servicer, Wells Fargo Bank, N.A., as Master Servicer and Trust Administrator and Swap Administrator and HSBC Bank USA, National Association, as Trustee (Litton Loan Servicing LP is successor servicer to Fremont Investment & Loan per the Asset Purchase Agreement dated May 7, 2008 between Fremont Investment & Loan and Litton Loan Servicing LP) |

Fremont – HSBC POA w/Addendum

| #296-21 | Fremont Home Loan Trust 2006-D, Asset Backed Certificates, Series 2006-D<br>-Pooling and Servicing Agreement dated as of November 1, 2006 by and Fremont Mortgage Securities Corporation, as Depositor, Fremont Investment & Loan, as Sponsor, Originator and Servicer, Wells Fargo Bank, N.A., as Master Servicer and Trust Administrator and Swap Administrator and HSBC Bank USA, National Association, as Trustee (Litton Loan Servicing LP is successor servicer to Fremont Investment & Loan per the Asset Purchase Agreement dated May 7, 2008 between Fremont Investment & Loan and Litton Loan Servicing LP) |
|---|---|
| #296-22 | Fremont Home Loan Trust 2006-E, Asset Backed Certificates, Series 2006-E<br>-Pooling and Servicing Agreement dated as of December 1, 2006 by and Fremont Mortgage Securities Corporation, as Depositor, Fremont Investment & Loan, as Sponsor, Originator and Servicer, Wells Fargo Bank, N.A., as Master Servicer and Trust Administrator and Swap Administrator and HSBC Bank USA, National Association, as Trustee (Litton Loan Servicing LP is successor servicer to Fremont Investment & Loan per the Asset Purchase Agreement dated May 7, 2008 between Fremont Investment & Loan and Litton Loan Servicing LP) |


END OF DOCUMENT

Fremont – HSBC POA w/Addendum

24-19

FILED
OCT 01 2019
TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

Michael Khader, Esq., SUBSTITUTE REFEREE!!!

Theodore Brundage, Esq., Referee

Journal News – Westchester Area - ( City of Yonkers, NO Postings. )

SUPREME COURT – COUNTY OF WESTCHESTER

HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE UNDER THE

POOLING AND SERVICING AGREEMENT DATED AS OF MAY 1, 2005,

FREMONT HOME LOAN TRUST 2005-B, Plaintiff against

KIM TRAUB, et al Defendant(s).

Pursuant to a Judgment of Foreclosure and Sale entered on August 5, 2009.

I, the undersigned Referee will sell at public auction at the Lobby of the Westchester

County Courthouse, 111 Dr. Martin Luther King, Jr. Boulevard, White Plains, N.Y.

on the 30th day of October, 2019 at 9:30 a.m. premises described as follows:

All that certain, lot, piece or parcel of land, situate, lying and being in the City of

Yonkers, County of Westchester and State of New York.

Said premises known as 111 Hoover Road, Yonkers, N.Y. 10710.

(Section: 3., Block: 3196, Lot: 6).

Approximate amount of lien $ 492,232.03 plus interest and costs.

Premises will be sold subject to provisions of filed judgment and terms of sale.

Index No. 6318-07.  Michael Khader, Esq., Referee.

McCabe, Weisberg & Conway, LLC

Attorney(s) for Plaintiff

145 Huguenot Street – Suite 210

New Rochelle, New York 10801

(914) 636-8900

17–301449

STATE OF NEW YORK,
COUNTY OF WESTCHESTER.

AFFIDAVIT OF SERVICE
BY MAIL

---

Desmond Peeples being duly sworn, says: that I am over the age of eighteen years and am not a party herein, that I reside in Rockland County and that on the 25 day of September, 2019, served a copy of the within

NOTICE OF SALE

upon the parties hereinafter named at the places hereinafter stated and set opposite their name by depositing same to be properly enclosed in a post-paid, properly addressed wrapper, and deposited in an official depository under the exclusive care and custody of the United States Post Office Department within the City and State of New York, directed to be said parties at their last known addresses given below.

To:

Clair & Gjertsen
720 White Plains Road
Scarsdale, New York 10583
Attorney for Kim Traub

Alex Aguilara
111 Hoover Road
Yonkers, New York 10710

Michael Khader Esq. (Referee)
733 Yonkers Avenue Suite 200
Yonkers, New York 10704

Desmond Peeples

Sworn to me on this
25 day of September, 2019

NOTARY PUBLIC

DANIEL BRITO
Notary Public, State of New York
Reg. No. 01BR6141638
Qualified in Westchester County
Commission Expires February 27, 2022

**Index No. 6318-07**

**SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER**

---

FREMONT INVESTMENT & LOAN,

Plaintiff.

-against-

KIM TRAUB; ALEX AGUILARA,

**DEFENDANTS.**

---

### NOTICE OF SALE

---

**McCABE, WEISBERG & CONWAY, LLC**
Attorneys for PLAINTIFF
145 Huguenot St., Suite 210
New Rochelle, NY 10801
914.636.8900
914.636.8901 facsimile

SUPREME COURT THE STATE OF NEW YORK:
COUNTY OF WESTCHESTER

---------------------------------------------------------------X

FREMONT INVESTMENT & LOAN,    Index No: 6318-07

               NOTICE OF SALE

    Plaintiff.

  -against-

KIM TRAUB; ALEX AGUILARA,


     Defendants.

---------------------------------------------------------------X

    TAKE NOTICE that the within is a true copy of a Notice of Sale for 111 Hoover

Road, Yonkers, New York 10710 in WESTCHESTER County.

       McCABE, WEISBERG & CONWAY, LLC

Dated: February 6, 2024   By: _____
   Melville, NY

       _____Melissa A. Sposato_____, ESQ.
       Attorneys for Plaintiff
       One Huntington Quadrangle, Suite 4N25
       Melville, NY 11747
       (631) 812-4084
       (855) 845-2584 facsimile


To:
Clair & Gjertsen
720 White Plains Road
Scarsdale, New York 10583
*Attorney for Kim Traub*

Alex Aguilara
111 Hoover Road
Yonkers, New York 10710

Michael Khader Esq. (Referee)
733 Yonkers Avenue Suite 200
Yonkers, New York 10704

NOTICE OF SALE
SUPREME COURT - COUNTY OF WESTCHESTER

FREEMONT INVESTMENT & LOAN

                                        Plaintiff,

Against

KIM TRAUB, ALEX AGUILARA

                                        Defendant(s)

Pursuant to a Judgment of Foreclosure and Sale, duly entered 08/05/2009, I, the undersigned Referee, will sell at public auction, in the lobby of the Westchester County Courthouse, 111 Dr. Martin Luther King, Jr. Blvd., White Plains, NY 10601 on 3/18/2024 at 9:30AM, premises known as 111 Hoover Road, Yonkers, New York 10710, And Described As Follows:

ALL that certain plot piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City Of Yonkers, County Of Westchester And State Of New York.

Section 3 Block 3196 Lot 6
The approximate amount of the current Judgment lien is $492,232.03 plus interest and costs. The Premises will be sold subject to provisions of the aforesaid Judgment of Foreclosure and Sale; Index # 6318/07

Michael John Khader, Esq., Referee.
MCCABE, WEISBERG & CONWAY, LLC, 10 Midland Avenue, Suite 205, Port Chester, NY 10573
Dated: 1/8/2024    File Number: 17-301449    CA

SUPREME COURT OF THE STATE OF NEW YORK:
COUNTY OF WESTCHESTER
----------------------------------------------------------X
FREMONT INVESTMENT & LOAN,

                                        INDEX NO: 6318-07

                         Plaintiff,

                   -against-                      AFFIRMATION OF SERVICE

KIM TRAUB; ALEX AGUILARA,

                        Defendant.

----------------------------------------------------------X

STATE OF NEW YORK
COUNTY OF SUFFOLK

    I, Christina Hussey affirm this *6th* day of February 2024, under the penalties of perjury, under the laws of New York State, which may include a fine or imprisonment, that the foregoing is true and correct, and I understand that this document may be filed in an action or proceeding in a court of law.

    I am over the age of eighteen years and am not a party herein, that I maintain my place of employment in Suffolk County and that on February *6* , 2024 I caused a copy of the enclosed

        to go into the mail by placing said motion with the mailroom of McCabe, Weisberg & Conway, LLC, who, in their normal course of duties, placed the motion and exhibits in a properly sealed envelope, with proper postage, for first class U.S. Mail delivery to the following addresses:

Clair & Gjertsen
720 White Plains Road
Scarsdale, New York 10583
**Attorney for Kim Traub**

Alex Aguilara
111 Hoover Road
Yonkers, New York 10710

Michael Khader Esq. (Referee)
733 Yonkers Avenue Suite 200
Yonkers, New York 10704

Dated: February _____, 2024

Index No. 6318-07

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF WESTCHESTER**

FREMONT INVESTMENT & LOAN,

Plaintiff.

-against-

KIM TRAUB; ALEX AGUILARA,

**DEFENDANTS.**

## NOTICE OF SALE

**McCABE, WEISBERG & CONWAY, LLC**
Attorneys for PLAINTIFF
One Huntington Quadrangle, Suite 4N25
Melville, NY 11747
(631) 812-4084
(855) 845-2584 facsimile

# EXHIBIT

## C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION
IN RE                                          CHAPTER 13

KIM TRAUB A/K/A KIM M TRAUB A/K/A          CASE NO. 25-22974-dsj
AQUA BRIGHT A/K/A KIMBERLY
TRAUB                                         JUDGE: David S. Jones

            DEBTOR

---

## RELIEF FROM STAY – REAL ESTATE AND COOPERATIVE APARTMENTS

            Diego Rojas, Contract Management Coordinator
I, _____
    <NAME AND TITLE> OF
 PHH Mortgage Corporation as Servicer for  HSBC Bank USA, National Association, as
Trustee for Fremont Home Loan Trust 2005-B, Mortgage-Backed Certificates, Series 2005-B
(HEREINAFTER, "MOVANT"), HEREBY DECLARE (OR CERTIFY, VERIFY. OR STATE):

### BACKGROUND INFORMATION

1. REAL PROPERTY OR COOPERATIVE APARTMENT ADDRESS WHICH IS THE SUBJECT OF THIS

MOTION:  111 Hoover Road, Yonkers, NY 10710

2. LENDER NAME:  HSBC Bank USA, National Association, as Trustee for Fremont Home

Loan Trust 2005-B, Mortgage-Backed Certificates, Series 2005-B

3. DATE OF MORTGAGE:  02/23/2005

4. POST-PETITION PAYMENT ADDRESS:  PHH MORTGAGE, ATTN: SBRP, PO BOX 24781,
   WEST PALM BEACH FL 33416

### DEBT/VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AT THE TIME OF
FILING THE MOTION: $1,512,395.41 as of 02/10/2026
(Note: this amount may not to be relied on as a "payoff" quotation.)

26-100863

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT: $681,800.00

7. SOURCE OF ESTIMATED VALUATION:

Debtor Schedule D

## STATUS OF DEBT AS OF
## THE PAYOFF DATE
## (as of 02/10/2026)

8. TOTAL INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF PAYOFF FILING DATE:

$1,512,395.41

 A. AMOUNT OF PRINCIPAL: $419,346.60

 B. AMOUNT OF INTEREST: $689,707.50

 C. AMOUNT OF ESCROW (TAXES AND INSURANCE): $369,150.03

 D. AMOUNT OF FORCED PLACED INSURANCE EXPENDED BY MOVANT: Included in paragraph 8C

 E. AMOUNT OF ATTORNEYS' FEES BILLED TO DEBTOR(S) PRE-PETITION: Included in paragraph 10

 F. AMOUNT OF LATE FEES, IF ANY, BILLED TO DEBTOR(S): $6,319.56

9. CONTRACTUAL INTEREST RATE: 9.00000%

(If interest rate is (or was) adjustable, please list the rate(s) and date(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: N/A.)

10. PLEASE EXPLAIN ANY ADDITIONAL FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR'S/DEBTORS' ACCOUNT AND NOT LISTED ABOVE:

RECOVERABLE BALANCE $28,990.15

SUSPENSE BALANCE ($1,118.43)

(If additional space is needed, please list the amounts on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: N/A.)

26-100863

**AMOUNT OF ALLEGED DEFAULT AS OF THE PAYOFF DATE
(AS OF 02/10/2026)**

11. DATE LAST PAYMENT WAS RECEIVED: <u>N/A</u>

ALLEGED TOTAL NUMBER OF CONTRACTUAL PAYMENTS DUE: <u>219</u>.

12. PLEASE LIST ALL CONTRACTUAL PAYMENTS ALLEGED TO BE IN DEFAULT:

| ALLEGED PAYMENT DUE DATE | ALLEGED AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED (IF ANY) |
|---|---|---|---|---|---|---|
| 12/1/07-8/1/10 | $3,441.94 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 9/1/10-9/1/11 | $4,660.73 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 10/1/11-10/1/12 | $4,606.53 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 11/1/12-5/1/15 | $4,055.14 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 6/1/15-5/1/16 | $3,722.71 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 6/1/16-5/1/17 | $14,140.22 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 6/1/17-11/1/17 | $3,637.27 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 12/1/17-1/1/18 | $4,048.14 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 2/1/18-9/1/18 | $4,044.77 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 10/1/18-10/1/19 | $4,020.88 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 11/1/19-8/1/20 | $3,610.53 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 9/1/20-7/1/21 | $4,819.52 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 8/1/21-7/1/22 | $6,039.88 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 8/1/22-11/1/22 | $6,029.06 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 12/1/22-7/1/23 | $6,044.75 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 8/1/23-3/1/24 | $4,863.69 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 4/1/24-3/1/25 | $4,868.34 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| 4/1/25-10/1/25 | $5,938.45 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

26-100863

| 11/1/25- 2/1/26 | $4,753.91 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Totals | $ 1,080,659.61 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

13. AMOUNT OF MOVANT'S ATTORNEYS' FEES BILLED TO DEBTOR FOR THE PREPARATION, FILING AND PROSECUTION OF THIS MOTION: $0.00

14. AMOUNT OF MOVANT'S FILING FEE FOR THIS MOTION: $0.00

15. OTHER ATTORNEYS' FEES BILLED TO DEBTOR POST-PETITION: $0.00

16. AMOUNT OF MOVANT'S POST-PETITION- INSPECTION FEES: $0.00

17. AMOUNT OF MOVANT'S POST-PETITION APPRAISAL/BROKER'S PRICE OPINION: $0.00

18. AMOUNT OF FORCED PLACED INSURANCE OR INSURANCE PROVIDED BY THE MOVANT POST-PETITION: $0.00

19. SUM HELD IN SUSPENSE BY MOVANT IN CONNECTION WITH THIS CONTRACT, IF APPLICABLE: ($1,118.43)

20. AMOUNT OF OTHER POST-PETITION ADVANCES OR CHARGES, FOR EXAMPLE TAXES, INSURANCE INCURRED BY DEBTOR, ETC.: N/A

## REQUIRED ATTACHMENTS TO MOTION

Please attach the following documents to this motion and indicate the exhibit number associated with the documents.

(1)    Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. (Exhibit A.)

(2)    Copies of documents establishing proof of standing to bring this Motion. (Exhibit A.)

(3)    Copies of documents establishing that Movant's interest in the real property or cooperative apartment was perfected. For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property or cooperative apartment is located in. (Exhibit N/A.)

26-100863

## CERTIFICATION FOR BUSINESS RECORDS

I CERTIFY THAT THE INFORMATION PROVIDED IN THIS FORM AND/OR ANY EXHIBITS ATTACHED TO THIS FORM (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, IMMEDIATELY ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS, WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND WERE MADE BY THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER CERTIFY THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, IMMEDIATELY ABOVE, ARE TRUE AND ACCURATE COPIES OF THE ORIGINAL DOCUMENTS. I FURTHER CERTIFY THAT THE ORIGINAL DOCUMENTS ARE IN MOVANT'S POSSESSION, EXCEPT AS FOLLOWS: N/A

## DECLARATION

I, _____ Diego Rojas, Contract Management Coordinator _____

<NAME AND TITLE> OF
PHH MORTGAGE CORPORATION AS SERVICER FOR HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR FREMONT HOME LOAN TRUST 2005-B, MORTGAGE-BACKED CERTIFICATES, SERIES 2005-B, HEREBY DECLARE (OR CERTIFY, VERIFY, OR STATE) PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT WEST PALM BEACH, FLORIDA ON THIS **3** DAY OF
_____ MARCH _____ , 2026.

_____
Diego Rojas
_____
Print Name
Contract Management Coordinator
_____
Title
PHH MORTGAGE CORPORATION AS SERVICER
FOR HSBC Bank USA, National Association, as Trustee
for Fremont Home Loan Trust 2005-B, Mortgage-Backed
Certificates, Series 2005-B
C/O PHH Mortgage Services
Attn: Bankruptcy Department
PO Box 24605
West Palm Beach, FL 33416

26-100863

# EXHIBIT

# D

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Kim Traub | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK, WHITE PLAINS DIVISION | | |
| Case number (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property     12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☒ Yes. Fill in all of the information below.

**Part 1:     List All Secured Claims**

| 2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.   If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name. | *Column A* **Amount of claim** Do not deduct the value of collateral. | *Column B* **Value of collateral that supports this claim** | *Column C* **Unsecured portion** If any |
|---|---|---|---|
| **2.1**   PHH Mortgage Services **Describe the property that secures the claim:** | $1,412,448.39 | $681,800.00 | $730,648.39 |

Creditor's Name
Bankruptcy
Department-P.O. Box
24605
West Palm Beach, FL
33416

Number, Street, City, State & Zip Code

**Describe the property that secures the claim:**

111 Hoover Road, Yonkers, NY 10710
Westchester County

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☒ Disputed

**Who owes the debt?** Check one.

☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☒ Other (including a right to offset)     First Mortgage

Date debt was incurred _____     Last 4 digits of account number _____

| | |
|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | $1,412,448.39 |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $1,412,448.39 |

**Part 2:     List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

Official Form 106D                **Schedule D: Creditors Who Have Claims Secured by Property**                page 1 of 1